(No. 49515.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. RAYMOND SCOTT LARSEN, Appellant.

*Opinion filed January 26, 1979.*

KLUCZYNSKI, J., took no part.
CLARK, J., and GOLDENHERSH, C.J., dissenting.

James J. Doherty, Public Defender, and Richard D. Kharas, Assistant Public Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, of Chicago, and Lee T. Hettinger, Michael John Madden, and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

Raymond Scott Larsen was convicted of murder (Ill. Rev. Stat. 1971, ch. 38, par. 9—1) following a bench trial in the circuit court of Cook County, and sentenced to a term of 100 to 300 years' imprisonment. The appellate court affirmed (47 Ill. App. 3d 9), and we granted the defendant's petition for leave to appeal (58 Ill. 2d R. 315).

The facts of the case are fully set out in the appellate court opinion, and will be restated only to the extent necessary on this appeal. The defendant admitted having committed the homicide but relied upon the affirmative defense of insanity at the time of the slaying. (The defendant earlier had been examined by Dr. Robert Reifman and found fit to stand trial.) The People filed a

written pretrial motion to require the defendant to submit to examination by a State-designated psychiatrist (Ill. Rev. Stat. 1971, ch. 38, par. 115—6). There was one day's delay between the hearing on the People's motion and entry of the order allowing it, to permit the designation of the psychiatrist and the date and place of examination. At the hearing, the court indicated its intention to enter an order granting the motion upon being furnished the pertinent information by the prosecution, and an assistant State's Attorney stated: "I will inform counsel of the name, location and time, if he likes, of the psychiatric examination. At this time I have not set it up." The order was entered August 16, 1973 (the following day), appointing Dr. Robert Reifman, assistant director of the Psychiatric Institute of the Circuit Court of Cook County, to conduct an examination "on August 23, 1973, or on any date subsequent, necessary to complete such examination." The defendant's counsel did not receive notice of the location and time, or of the name of the psychiatrist prior to the examination, which was conducted on August 24, 1973.

At trial, the defendant offered the testimony of his psychiatrist, Dr. Marvin Ziporyn, who was of the opinion that the defendant suffered from organic brain syndrome associated with cerebral trauma. Dr. Ziporyn's response to a hypothetical question incorporating the defendant's life history and behavior was that the hypothetical person had a mental defect, that he had the capacity to appreciate the criminality of his conduct, but that he lacked substantial capacity to conform his conduct to the requirements of law. In addition, lay testimony was given concerning the circumstances of the defendant's unhappy childhood in support of the insanity defense.

Based upon the court-ordered psychiatric examination, Dr. Reifman testified for the People on rebuttal that the defendant had an antisocial personality, but was not suffering from organic brain syndrome. He responded to a

hypothetical question positing the defendant's life experience and activities by concluding that such a person did not suffer from a mental defect or disease and had substantial capacity to conform his conduct to the requirement of the law and to appreciate the criminality of his conduct. The People offered evidence that the defendant had no disciplinary problems while living and working within a minimum security area of the penitentiary from which he had been furloughed for good behavior at the time of the murder. A prosecution witness also testified as to remarks the defendant had made while taking a rifle and money from her apartment at gunpoint on the day of the killing, which was offered to show he appreciated the criminality of his conduct.

The principal questions raised by the defendant are (1) whether our Rule 413 (58 Ill. 2d R. 413) requires that the defendant and his counsel be given reasonable notice of the time and place of the ordered psychiatric examination, and (2) whether the court-appointed psychiatrist's examination was a "critical stage" of the prosecution that entitled the defendant to the presence of counsel. Rule 413 reads in part:

> "(a) The person of the accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused, among other things, to:
> * * *
>> (ix) submit to a reasonable physical or medical inspection of his body.
>
> (b) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present. * * *" 58 Ill. 2d R. 413.

The defendant contends that the psychiatric examination ordered on the People's motion and conducted by a psychiatrist of the People's choosing was a "medical

inspection of his body." If that is so, he argues, the rule requires giving reasonable notice of its time and place, as well as conferring the right to the presence of his counsel. We do not, however, consider that the psychiatric examination was a "medical inspection" of the type contemplated by the rule. The specific authority to order a psychiatric examination for purposes of the People's independent ascertainment of an accused's mental condition at the time of a criminal occurrence, with reference to the affirmative defense of insanity, is not founded on Rule 413, but on statute. Section 115–6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 115–6) provides:

> "Appointment of Psychiatrist. If the defendant has given notice that he may rely upon the defense of insanity *** or if the facts and circumstances of the case justify a reasonable belief that the aforesaid defenses may be raised, the Court shall, on motion of the State, order the defendant to submit to examination by at least one psychiatrist, to be named by the prosecuting attorney. *** The reports of such experts shall be made available to the defense. Any statements made by defendant to such experts shall not be admissible against the defendant unless he raises the defense of insanity *** in which case they shall be admissible only on the issue of whether he was insane ***."

The legislature has expressly provided in the statute that experts' reports be made available to the defense. It is significant that no provision was made by the legislature for the presence of counsel at the examination. It is the statute and not Rule 413 that establishes the procedures in a criminal proceeding with respect to a court-ordered psychiatric examination on the People's motion when it appears that a defendant may raise the affirmative defense of insanity. The submissions that may be required under Rule 413(a), and which give a right to the presence of counsel under 413(b), obviously relate to physical evi-

dence. A mental examination is not one of the possible submissions enumerated in Rule 413(a), and clearly it is not intended to be comprehended by "medical inspection of his body" as that term is used in the rule. This is illustrated by the fact that specific reference is made to "mental examinations" in Rule 413(c), and correlatively in Rule 412(a)(iv) allowing reciprocal discovery, among other tests, of any expert reports of "mental examinations" upon written motion.

The defendant also contends that Dr. Reifman's psychiatric examination constituted a critical stage of the prosecutorial proceedings and gave rise to a constitutional right to the presence of counsel. *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695, are cited as supporting this position. In *Wade,* the Supreme Court held that a post-indictment lineup, due to its inherent suggestability and grave potential for prejudice, was such a critical stage. When the issue is raised, the Supreme Court said, a court must "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." (388 U.S. 218, 227, 18 L. Ed. 2d 1149, 1157, 87 S. Ct. 1926, 1932.) The purpose underlying the right to counsel's presence at any critical stage is "to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *United States v. Wade* (1967), 388 U.S. 218, 227, 18 L. Ed. 2d 1149, 1157, 87 S. Ct. 1926, 1932.

In *Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695, the petitioner sought a writ of *mandamus* directing the district court to issue an order permitting his counsel and psychiatrist to attend a hospital staff conference concerning the petitioner's competency to stand trial and

his mental condition at the time of the offense he allegedly committed. The court refused to issue the writ saying that *mandamus* was not an appropriate remedy. In *dicta,* however, the court observed that the petitioner's claim was "anything but frivolous." (See 407 F.2d 695, 698-702.) In a separate opinion, then Circuit Judge Burger disagreed with the *dicta.* Likening the hospital staff conference to a Civil Rights Commission investigation (see *Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502), he stated that it " 'is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In short \*\*\* [it] does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts \*\*\*.' [363 U.S. 420, 441, 4 L. Ed. 2d 1307, 1321, 80 S. Ct. 1502, 1514.] " (407 F.2d 695, 711.) And he further noted:

"There is no legal basis for equating a Medical Staff Conference to a 'confrontation' either in the traditional sense or within the meaning of *Wade-Gilbert.* Those cases apply only to critical prosecutive stages. The vice of requiring a sensitive diagnostic process to be conducted as though it were an adversary matter seems too obvious to need discussion. The value of that process is undermined by anything which inhibits the free exchange of views; the integrity of the process makes privacy imperative. The presence of a lawyer for the patient at a staff conference would obviously inhibit the free expression and exchange of ideas which normally occurs. The check on the processes \*\*\* is the power to cross examine \*\*\*.

The legal method of inquiry is unsuited to the medical investigation to be conducted. Medical diagnostic procedures should not be inhibited by non-medical notions of procedural 'due process.' Indeed it is far more consonant with the sympathetic relationship existing between Doctor and patient that the medical inquiry be divested as much as possible of an adversary character. Our approach should encourage an attitude of cooperation rather than partisanship; emphasis must be on the common pursuit for an objective, uninhibited inquiry, uncluttered by the techniques and devices of the courtroom." 407 F.2d 695, 711.

The great majority of courts that have considered the question both prior and subsequent to *Thornton* have held that there is no right to have counsel present at the examination. These decisions include: *United States v. Trapnell* (2d Cir. 1974), 495 F.2d 22; *United States v. Greene* (7th Cir. 1974), 497 F.2d 1068, *cert. denied* (1975), 420 U.S. 909, 42 L. Ed. 2d 839, 95 S. Ct. 828; *United States ex rel. Stukes v. Shovlin* (3d Cir. 1972), 464 F.2d 1211; *United States v. Mattson* (9th Cir. 1972), 469 F.2d 1234, *cert. denied* (1973), 410 U.S. 986, 36 L. Ed. 2d 183, 93 S. Ct. 1513; *United States v. Smith* (5th Cir. 1971), 436 F.2d 787; *United States v. Bohle* (7th Cir. 1971), 445 F.2d 54; *United States v. Baird* (2d Cir. 1969), 414 F.2d 700, *cert. denied* (1970), 396 U.S. 1005, 24 L. Ed. 2d 497, 90 S. Ct. 559; *United States ex rel. Wax v. Pate* (7th Cir. 1969), 409 F.2d 498, *cert. denied* (1969), 396 U.S. 830, 24 L. Ed. 2d 81, 90 S. Ct. 83; *United States v. Albright* (4th Cir. 1968), 388 F.2d 719; *United States v. Fletcher* (D.D.C. 1971), 329 F. Supp. 160; *People v. Martin* (1971), 386 Mich. 407, 192 N.W.2d 215, *cert. denied* (1972), 408 U.S. 929, 33 L. Ed. 2d 342, 92 S. Ct. 2505; *State v. Whitlow* (1965), 45 N.J. 3, 210 A.2d 763;

*State v. Wilson* (1971), 26 Ohio App. 2d 23, 268 N.E.2d 814; *Commonwealth v. Stukes* (1969), 435 Pa. 535, 257 A.2d 828. There have been contrary decisions: *Lee v. County Court* (1971), 27 N.Y.2d 432, 267 N.E.2d 452, *cert. denied* (1971), 404 U.S. 823, 30 L. Ed. 2d 50, 92 S. Ct. 46 (counsel's role limited to passive observer); *In re Spencer* (1965), 63 Cal. 2d 400, 406 P.2d 33, 46 Cal. Rptr. 753 (but certain procedural safeguards held sufficient to justify exclusion of counsel at examination).

A psychiatric examination is to be distinguished from a lineup. An examination by a qualified, court-appointed expert is not inherently suggestive, and it does not ordinarily pose a grave potential for substantial prejudice. We consider that the defendant's rights were adequately safeguarded by the opportunity to present his own expert psychiatric testimony at trial, to cross-examine Dr. Reifman as to his methodology and conclusions, and by the statutory prohibition against the defendant's statements being admitted into evidence on any issue other than his affirmative defense of insanity (Ill. Rev. Stat. 1971, ch. 38, par. 115—6). We do not find anything in the record to suggest that the presence of the defendant's counsel was required to insure his right to a fair trial.

There are also contentions by the defendant that the assistant State's Attorney made a "specific promise," at the hearing on the motion, to give notice of the time and place of the examination and the name of the psychiatrist, and that the defendant was prevented from receiving the benefit of counsel's advice prior to examination. The assistant State's Attorney's offer to "inform counsel of the name, location and time, if he likes," was conditional at best and must be deemed waived. According to the record, no request was made by the defendant's attorney to be so advised. The record does not show any prejudice because there was no notification. The court had indicated at the hearing that the State's motion would be allowed, and the

order, signed the following day, provided that the examination was not to be conducted until at least one week after the order was entered. Considering the circumstances, there was adequate opportunity for the defendant to have consulted with his attorney.

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.

MR. JUSTICE CLARK, dissenting:

I believe the judgments below should have been reversed and the cause remanded to the circuit court.

The majority, of course, correctly states that the authority to order a psychiatric examination for the State's "independent ascertainment of an accused's mental condition at the time of a criminal occurrence" is found in section 115—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 115—6). (74 Ill. 2d at 352.) But that is not germane here. The issue is whether the defendant was entitled to reasonable notice of and presence of counsel at the pretrial psychiatric examination once he indicated he would rely on the defense of insanity.

Our Rule 413 (58 Ill. 2d R. 413) provides:

"(a) The person of the accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, *a judicial officer may require the accused,* among other things, *to*:

\* \* \*

(ix) *submit to a reasonable physical or medical inspection of his body.*

(b) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable *notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present.* Provision may be made for ·

> appearances for such purposes in an order admitting the accused to bail or providing for his release." (Emphasis added.)

The plain reading of this rule evidences the intent to require notice and presence of counsel whenever an accused must submit to a "medical inspection of his body." The majority asserts that Rule 413 refers to physical evidence only. I disagree. I do not believe the rule indicates an intention or implication to distinguish between medical and psychiatric inspection or examination. Webster's Third New International Dictionary 1832 (1971) defines psychiatry as "a branch of medicine that deals with the science and practice of treating mental, emotional, or behavioral disorders ***." *Medical* generically encompasses *psychiatric*.

But more importantly, Rule 413 only allows what the sixth amendment (U.S. Const., amend. VI) requires: the presence of counsel at a pretrial psychiatric examination, or a satisfactory substitute for presence, because the examination is a critical stage of the prosecution. In *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, the Supreme Court held that a post-indictment lineup was a critical stage of the proceedings necessitating the presence of counsel. Its rationale, which I find pertinent here, was that an accused "is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." (388 U.S. 218, 226, 18 L. Ed. 2d 1149, 1157, 87 S. Ct. 1926, 1932.) The presence of counsel at the psychiatric examination "is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witness against him and to have effective assistance of counsel at the trial itself." *Wade,* 388 U.S. 218, 227, 18 L. Ed. 2d 1149, 1157, 87 S. Ct. 1926, 1932; Comment, *Right*

*to Counsel at the Pretrial Mental Examination of an Accused,* 118 U. Pa. L. Rev. 448 (1970).

The very nature of a psychiatric examination, ordered by a trial court on the State's motion, warrants definition as a critical stage of the proceedings. The examination is adversary in that a State-appointed psychiatrist (Ill. Rev. Stat. 1971, ch. 38, par. 115—6) gives the tests and asks the questions. A defendant may not be confronted by the State *per se,* that is by the prosecutor, but the defendant is confronted by an appointed agent of the State. Moreover, a defendant may be lulled into believing that the psychiatrist is impartial. (See Diamond & Louisell, *The Psychiatrist as an Expert Witness: Some Ruminations and Speculations,* 63 Mich. L. Rev. 1335, 1344 (1965).) The purpose of the examination may not be to gather evidence; nevertheless, the examination is of an investigative character resulting in statements, sometimes incriminating, getting before the trier of fact through the testimony of the examining physician. (*In re Spencer* (1965), 63 Cal. 2d 400, 410, 406 P.2d 33, 40, 46 Cal. Rptr. 753, 760.) This leads to the second point—effective cross-examination.

For meaningful cross-examination, a defense attorney must "have some understanding of the psychiatrist's diagnostic techniques" and "know the methodology and approach followed if he is to be able to challenge effectively the validity of the conclusions reached by the state psychiatrist." (Meister, *Miranda On the Couch,* 11 Colum. J.L. & Soc. Prob. 403, 445 (1975).) The psychiatrist's theories and techniques must be comprehended before they may be challenged at trial. It is doubtful that anyone, attorney or psychiatrist, can acquire this comprehension from frequently conclusional, summary or otherwise inadequate reports of examinations by the examining psychiatrists. (For an example, see *Calloway v. United States* (D.C. Cir. 1959), 270 F.2d 334, 335.) This is to say nothing of impediments sometimes erected to limit access

to such medical and institutional reports. *Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695, 702-03; Comment, *Right to Counsel at the Pretrial Mental Examination of an Accused,* 118 U. Pa. L. Rev. 448, 449 (1970).

A third consideration is the possible undue reliance by a trier of fact on expert opinion evidence by the examining psychiatrist. Psychiatry is not an exact science and psychiatric evidence is only derivative: the psychiatrist studies the mental state of a patient indirectly via the patient's speech and behavior. Such evidence is a necessity, but its usefulness is effective only if we recognize that reliance on the testimony of a psychiatrist "is measured by the probability that what he has to say offers more information and better comprehension of the human behavior which the law wishes to understand. The psychiatrist offers a hypothesis explaining" a patient's or an accused's thoughts, feelings and actions, and attaches value to them. But the "legal usefulness of such hypotheses and values will depend less upon their scientific precision than upon their wisdom." (Diamond & Louisell, *The Psychiatrist as an Expert Witness: Some Ruminations and Speculations,* 63 Mich. L. Rev. 1335, 1342 (1965).) In other words, such testimony, however accurate and wise it may be, is value laden. It is so because the psychiatric science is still imprecise, and not fully understood or embraced by the many but only by the few who may possess "technical knowledge of some depth." For this reason the trier of fact may attach an overriding credence to such an expert. This is a problem that the defense, through its own psychiatric experts and through cross-examination, must contend with. To adequately do so, the defense attorney *must be* thoroughly familiar with the hypotheses and methods of the State-appointed psychiatrist.

The majority also correctly notes that its decision follows the view of most jurisdictions—but not all. Others recognize the right to presence of counsel at a pretrial

psychiatric examination. (*E.g., Lee v. County Court* (1971), 27 N.Y.2d 432, 267 N.E.2d 452, *cert. denied* (1971), 404 U.S. 823, 30 L. Ed. 2d 50, 92 S. Ct. 46; *In re Spencer* (1965), 63 Cal. 2d 400, 406 P.2d 33, 46 Cal. Rptr. 753; *Schantz v. Eyman* (9th Cir. 1969), 418 F.2d 11, *cert. denied* (1970), 397 U.S. 1021, 25 L. Ed. 2d 530, 90 S. Ct. 1259. See also *Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695.) After previous appeals and remands, the trial court, in *Lee v. County Court* (1971), 27 N.Y.2d 432, 267 N.E.2d 452, ordered a pretrial psychiatric examination which both the defense counsel and district attorney were permitted to attend. On advice of counsel at the examination, the defendant refused to answer questions concerning his behavior on the day of the crime; the psychiatrists were, accordingly, unable to give an opinion regarding the accused's mental state. On motion of the State, the court ordered the defendant's insanity defense struck, exclusion of his psychiatric evidence, and a new examination without the presence of nonmedical personnel. The New York Court of Appeals ruled that the defense should not have been struck, although preventing the defendant from presenting psychiatric evidence was acceptable. Turning to the issue of right to counsel at the examination, that court succinctly held because "pre-trial psychiatric examinations are a critical stage in the prosecution of one accused of a crime under the *Wade* rationale, the defendant is entitled to have counsel present to make more effective his basic right of cross-examination." (27 N.Y.2d 432, 444, 267 N.E.2d 452, 459.) The court also determined that the prosecuting attorney could attend and that the role of counsel was passive and limited to observation.

In a *habeas corpus* proceeding, the Federal Ninth Circuit Court of Appeals held that "the post-indictment questioning of petitioner by a State psychiatrist on the county attorney's instructions, without notice to and in

the absence of counsel, violated petitioner's right to the assistance of counsel at all critical stages of the criminal proceedings against him." (*Schantz v. Eyman* (9th Cir. 1969), 418 F.2d 11, 13.) *Schantz* was decided on the basis of *United States v. Wade,* above, but in the context of preventing violation of the fifth amendment privilege against self-incrimination at the examination, an issue not raised here. (The *Schantz* court apparently would allow an active role for counsel at the examination.) The court concluded that because the petitioner was entitled to but denied assistance of counsel, his conviction could not stand.

*Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695, cited by the majority, also recognized the right, with qualification. *Thornton's* reasoning, in *dicta,* lends support to a claim of a sixth amendment right to counsel at the pretrial psychiatric examination although the court was addressing itself specifically to the "staff conference" (of examining psychiatrists) which follows the examination itself. (407 F.2d 695, 699-703.) In his dissent, Judge Burger viewed the staff conference, and impliedly the examination itself, as free from the adversary process. He felt the presence of defense counsel could only impair the investigation into and the decision-making process regarding a defendant's mental state. "The presence of a lawyer for the patient at a staff conference would obviously inhibit the free expression and exchange of ideas which normally occurs between the doctor and patient." (407 F.2d 695, 711.) I do not find this view convincing.

First, it is not so obvious that the presence of counsel would inhibit or impair an effective examination, especially where the attorney is confined to a passive role of observation as I believe he must be. *Lee v. County Court* (1971), 27 N.Y.2d 432, 444, 267 N.E.2d 452, 459.

Second, it is true the pretrial psychiatric examination is of an intimate nature, but portraying the examination as

involving a doctor-patient relationship, where the doctor is State appointed and may have an enduring relationship with the State, is a bit strained. The State-appointment element casts the examination into the realm of investigative and adversary.

Even *State v. Whitlow* (1965), 45 N.J. 3, 210 A.2d 763, cited by the majority, recognized that the presence of counsel at the psychiatric examination was not inherently harmful. The court simply felt presence of counsel was not commanded by the Constitution. Like others, however, I believe the presence of counsel may have a "beneficial effect" on the examination: "The reassuring presence of counsel could do much to alleviate the accused's feelings of isolation and distrust, and in fact contribute to the effectiveness of an examination otherwise hindered by the accused's reluctance to respond freely to the psychiatrist." Comment, *Right to Counsel at the Pretrial Mental Examination of an Accused,* 118 U. Pa. L. Rev. 448, 456 (1970).

(As has been suggested elsewhere (*e.g., Thornton v. Corcoran* (D.C. Cir. 1969), 407 F.2d 695, 702), alternative devices may be found which protect the defendant's sixth amendment right to counsel at a critical stage of the proceeding without requiring counsel's actual presence. In a particular case, psychiatrists may object for possibly legitimate reasons to the presence of an observing counsel. A videotape, for example, would intrude upon the examination only very minimally.)

I believe the defendant, under our Rule 413 and the sixth amendment of the United States Constitution, has the right to presence of counsel at a pretrial psychiatric examination, a critical stage of the prosecution. Moreover, the record shows inadequate notice of the examination. Hence, I would have reversed and remanded.

MR. CHIEF JUSTICE GOLDENHERSH joins in this dissent.