73 Ill. App.3d 971 (1979)
392 N.E.2d 736
In re ANGELO OTTOLINI.  (THE PEOPLE ex rel. R.C. STECK, Petitioner-Appellee,
v.
ANGELO OTTOLINI, Respondent-Appellant.)
No. 78-213.
Illinois Appellate Court  Fifth District.
Opinion filed July 13, 1979.
Rehearing denied August 7, 1979.
*972 Herbert A. Eastman, of Land of Lincoln Legal Assistance Foundation, Inc., of Cairo, for appellant.
William B. Ballard, Jr., State's Attorney, of Jonesboro (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.
Judgment affirmed.
Mr. JUSTICE KARNS delivered the opinion of the court:
Respondent, Angelo Ottolini, appeals from a judgment of the Circuit Court of Union County entered pursuant to the periodic review provisions of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91 1/2, par. 10-2). The court ordered respondent to remain hospitalized under the care of the Department of Mental Health at the Anna Mental Health and Development Center.
The evidence adduced at the hearing indicated that respondent was initially committed to a mental institution in 1937 after being declared incompetent to stand trial for murder. This initial commitment was followed by intermittent periods of commitment and release until 1952 when he was committed for a continuous period of time. Eventually, he was transferred to the Anna Mental Health and Development Center where he remains today.
On March 10, 1976, the superintendent of the Anna Mental Health and Development Center filed a notice with the court of the patient's *973 need for continued hospitalization. Respondent did not request a hearing and on March 25, 1976, the court entered an order finding respondent in need of further mental treatment. Two years later, pursuant to the provisions of the Illinois Mental Health Code, the superintendent again filed a notice with the court of the patient's need for hospitalization. The respondent secured the services of an attorney who filed a request for a hearing.
At the hearing, Dr. Clarence E. Boyd, staff psychiatrist of the Anna Mental Health and Development Center, testified for the State. Dr. Boyd testified that on March 10, 1978, he interviewed respondent at the Anna Mental Health and Development Center and elicited the following information. Initially, respondent had been hospitalized in 1937 after killing his neighbor. The respondent believed the neighbor, along with others, was trying to kill him in several bizarre manners. These methods included the electrification of a chicken coop; driving him out of his house in cold weather; and the extraction of fluid from his penis utilizing rays from their eyes. Dr. Boyd testified that respondent suffers from delusions of persecution along with auditory and other types of hallucinations. He often strikes his ears in an effort to shake up voices which he claims lie to him, and refuses to use electric cigarette lighters for fear of being electrocuted. The respondent, according to Dr. Boyd's testimony, often rubs his eyes because certain people, by using laser beams, are causing them to burn. The respondent once complained to a nurse that someone had been using laser beams on his feet, but later denied this report to Dr. Boyd saying instead that someone had cut his feet with a razor blade while he slept. The respondent told Dr. Boyd that if faced again with the same situation that precipitated the killing for which he was initially hospitalized in 1937 he would behave in the same fashion.
Dr. Boyd diagnosed respondent as suffering from schizophrenia of the paranoid type. He opined that the psychosis which precipitated the killing continued to be present in respondent and that he was potentially dangerous to others, as well as himself, although to a lesser degree. Dr. Boyd expressed the opinion that respondent was in need of continued mental treatment in a controlled environment. With certain safeguards and conditions, a sheltered care home would be a possibility in the future. For the present, however, Dr. Boyd believed respondent should remain hospitalized at the mental health and development center.
On cross-examination, Dr. Boyd indicated that he relied most heavily on the March 10 examination for his opinion that there had been no basic change in respondent. Dr. Boyd also stated that during the March 10 examination he did not inform respondent of any Miranda style warnings.
Dr. Elya Bresler, a clinical psychologist at the Anna Mental Health and Development Center, testified on behalf of respondent. He indicated *974 that he had seen respondent on an almost daily basis since 1977, but had never had a consultation with him on an individual basis. Dr. Bresler stated that respondent was suffering from a mental illness, but did not believe respondent was reasonably likely to cause physical harm to himself or others. Moreover, he testified that respondent could maintain his basic needs and functions in a supervised environment. Dr. Bresler, on cross-examination, admitted he had observed respondent's delusions but refused to testify to their specific content based on the psychologist/patient privilege of confidentiality.
The court found respondent in need of continued hospitalization and found that it could best be administered by the Anna Mental Health and Development Center.
Respondent contends that the trial court erred in admitting the testimony of psychiatrist Dr. Clarence E. Boyd which respondent alleges was inadmissible hearsay; that the trial court committed constitutional error by committing respondent to the Anna Mental Health and Development Center based on psychiatric interviews where he was not informed of a right to remain silent; that the order of the trial court committing respondent was contrary to the manifest weight of the evidence; that the trial court erred in not exhausting less restrictive treatment alternatives prior to ordering respondent to the Anna Mental Health and Development Center; and that the trial court erred in refusing to enter a commitment order of definite duration.
Initially, we note that a mental commitment proceeding of this nature is for the benefit of both the public and the patient. In this light the court, in People v. Sansone, 18 Ill. App.3d 315, 322, 309 N.E.2d 733, 738 (1974), stated:
"Inherent in civil commitment proceedings is the promise of the State, under a parens patriae theory, that the person who is being deprived of his liberty will receive treatment. * * * The procedures set forth in the Illinois Mental Health Code are a legislative recognition that civil commitment is a deprivation of personal liberty, and their purpose is to provide adequate safeguards against unreasonable detention and commitment."
Moreover, our supreme court in In re Stephenson, 67 Ill.2d 544, 554, 367 N.E.2d 1273, 1276-77 (1977), stated that the Mental Health Code, under which respondent was committed:
"* * * represents a serious attempt to provide beneficial treatment and care for the mentally ill with the minimum ostracism and confinement consistent with the protection of the public. * * * Moreover, the individual involved, as well as society, has a strong interest in getting needed care or treatment which will enable him to function normally * * *."
*975  1 With these admonitions in mind, we turn to respondent's assignments of error. Respondent first contends that the court, in finding him in need of mental treatment, improperly considered the hearsay testimony of Dr. Boyd which was based in part upon the medical records of the Anna Mental Health and Development Center. After a careful review of the record, we believe this argument is not persuasive. The evidence elicited during cross-examination indicated that Dr. Boyd's opinion concerning respondent's mental disorder and behavior was based upon Dr. Boyd's independent, firsthand observations of respondent during their March 10 consultation. This testimony, notwithstanding the testimony of Dr. Boyd that was based on the hospital records, was ample and sufficient to form a medical basis for respondent's commitment. See In re Smilley, 54 Ill. App.3d 31, 369 N.E.2d 315 (1977).
 2 Respondent next contends his right to due process was violated when he was examined during the March 10 meeting with Dr. Boyd without having been made aware that he had a right to remain silent, that anything he said could be used at the hearing and that he had a right to have an attorney present during the interview. In essence, he compares Dr. Boyd to a police officer and respondent to an accused, and consequently argues that the March 10 examination was an in-custody interrogation aimed at obtaining information that would be used at trial to deprive him of his liberty. We disagree. A psychiatric examination is to be distinguished from a police interrogation. An examination by a qualified psychiatrist, albeit employed by the State, is not inherently prejudicial and does not ordinarily pose a grave potential for abuse. We consider that respondent's rights were adequately safeguarded by the opportunity to present his own expert psychiatric testimony at the hearing in addition to being able to cross-examine Dr. Boyd as to his methodology and conclusions.
This issue, while not directly addressed in previous Illinois decisions, has been considered in the Federal courts with varied results. Although the court in Lessard v. Schmidt, 349 F. Supp. 1078 (E.D. Wis. 1972), vacated on other grounds, 414 U.S. 473, 38 L.Ed.2d 661, 94 S.Ct. 713 (1974), in interpreting the Wisconsin civil commitment statute, held that a mental patient is entitled to warnings similar to the Miranda rights, we believe the following language found in a separate opinion by then Circuit Judge Burger in Thornton v. Corcoran, 407 F.2d 695, 711 (D.C. Cir.1969), and quoted with approval by our separate supreme court in People v. Larsen, 74 Ill.2d 348, 354, 385 N.E.2d 679 (1979), is more pertinent:
"[A Hospital Staff Conference]'" is purely investigative and factfinding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or *976 property. In short * * * [it] does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts * * *." [quoting from Hannah v. Larche (1960), 363 U.S. 420, 441, 4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502, 1514.]'
* * *
`There is no legal basis for equating a Medical Staff Conference to a `confrontation' either in the traditional sense or within the meaning of Wade-Gilbert. Those cases apply only to critical prosecutive stages. The vice of requiring a sensitive diagnostic process to be conducted as though it were an adversary matter seems too obvious to need discussion. The value of that process is undermined by anything which inhibits the free exchange of views; the integrity of the process makes privacy imperative. The presence of a lawyer for the patient at a staff conference would obviously inhibit the free expression and exchange of ideas which normally occurs. The check on the processes * * * is the power to cross examine him.
The legal method of inquiry is unsuited to the medical investigation to be conducted. Medical diagnostic procedures should not be inhibited by non-medical notions of procedural `due process.' Indeed it is far more consonant with the sympathetic relationship existing between Doctor and patient that the medical inquiry be divested as much as possible of an adversary character. Our approach should encourage an attitude of cooperation rather than partisanship; emphasis must be on the common pursuit for an objective, uninhibited inquiry, uncluttered by the techniques and devices of the courtroom.'"
 3 Consequently, we do not believe due process requires Miranda style admonishments at a psychiatric interview conducted under the provisions of the Mental Health Code.
 4, 5 Respondent next contends the finding that respondent was in need of continued mental treatment was contrary to the manifest weight of the evidence. The State bears the burden of proving by clear and convincing evidence (Addington v. Texas, ___, U.S. ___, 60 L.Ed.2d 323, 99 S.Ct. 1804 (1979); People v. Sansone) that respondent is a person afflicted with a mental disorder, who, by reason of such disorder, is "reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs." (Ill. Rev. Stat. 1977, ch. 91 1/2, par. 1-11.) We think that the testimony of the psychiatrist clearly established that respondent had a mental illness. Respondent, *977 whose hallucinations and delusions persist unabated to the present day, was diagnosed as a paranoid schizophrenic. Moreover, we are of the opinion that the evidence was clear and convincing that respondent constituted a threat to others. Respondent told Dr. Boyd that if faced again with the same situation that precipitated the killing for which he was initially hospitalized in 1937, he would behave in the same manner. Therefore, we hold that the doctor's diagnosis coupled with respondent's statements were sufficient for the trial judge to find that respondent was in need of mental treatment. See also People v. Chapman, 67 Ill. App.3d 382, 385 N.E.2d 56 (1978).
Respondent next contends the trial court erred in not exhausting less restrictive treatment alternatives prior to ordering respondent to the Anna Mental Health and Development Center. In relevant part, section 9-6 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91 1/2, par. 9-6) provides:
"If any person is finally found to be in need of mental treatment or mentally retarded, the court, as part of the hearing shall consider the alternative forms of care or treatment which are desirable for and available to the patient, including but not limited to hospitalization."
Our reading of the record discloses the court complied with the requirements of section 9-6 by finding that respondent was in need of hospitalization. By this ruling, the court implicitly rejected Dr. Bresler's opinion that respondent could function in a sheltered care facility, while accepting Dr. Boyd's belief that respondent could best be treated at the Anna Mental Health and Development Center. As evidenced by the following excerpt, the court implicitly considered less restrictive forms of treatment for respondent:
"There has been the testimony of a psychiatrist and the testimony of a psychologist. There appears to be a difference of opinion. The Court, upon hearing the testimony, and the basis for each doctor's opinion, is of the opinion that the respondent, Angelo Ottolini, is in need of further hospitalization or, continued hospitalization, and at this point in time, it will be the order of the Court that Mr. Angelo Ottolini is in need of continued hospitalization, and that it can best be administered at this time at the Anna Mental Health and Development Center." (Emphasis added.)
Indeed, our court has previously ruled that it is not error in not considering less restrictive forms of treatment whatsoever where respondent was found in need of hospitalization. People v. Ralls, 23 Ill. App.3d 96, 318 N.E.2d 703 (1974).
 6 Respondent last assigns as error the trial court's refusal to enter a commitment order of definite duration. For this proposition he cites excerpts from recommendations of the Governor's Commission for *978 Revision of the Mental Health Code (1976) suggesting that orders for hospitalization or alternative treatment should be for a period of not to exceed 60 days. We note parenthetically that the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1978 Supp., ch. 91 1/2, par. 1-101 et seq., effective January 1, 1979), which replaced the Mental Health Code of 1967 under which respondent was committed, incorporates the 60-day rule referred to above. (Ill. Rev. Stat. 1978 Supp., ch. 91 1/2, par. 3-813, effective January 1, 1979.) We believe that respondent was adequately protected from being unduly institutionalized, as section 10-1 of the Code (Ill. Rev. Stat. 1977, ch. 91 1/2, par. 10-1) authorized any patient who had been hospitalized to file a petition for discharge "at any time." The petition must be accompanied by a physician's certificate indicating that the patient no longer requires hospitalization. This section, coupled with the mandatory periodic review provisions, and the continued use of writs of habeas corpus as expressly recognized by section 10-6 (Ill. Rev. Stat. 1977, ch. 91 1/2, par. 10-6) adequately assure that a patient will be hospitalized no longer than is necessary.
For the foregoing reasons, the judgment of the Circuit Court of Union County is affirmed.
Affirmed.
G. MORAN, P.J., and KASSERMAN, J., concur.