IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

June 9, 1997

FOR PUBLICATION

Cecil Crowson, Jr.
Appellate Court Clerk

Filed: June 9, 1997

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | KNOX CRIMINAL |
| | ) | |
| | ) | |
| Vs. | ) | HON. RICHARD BAUMGARTNER, |
| | ) | JUDGE |
| | ) | |
| DAVID PAUL MARTIN, | ) | |
| | ) | |
| Appellant. | ) | No. 03-S-01-9604-CR-00040 |

**For Appellant:**

Herbert S. Moncier
Ann C. Short
Knoxville, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante
Deputy Attorney General

Eugene J. Honea
Assistant Attorney General
Nashville, Tennessee

At Trial:
Randall E. Nichols
District Attorney General
Knoxville, Tennessee

Robert Jolley
Assistant District Attorney
Knoxville, Tennessee

# O P I N I O N

AFFIRMED                                          ANDERSON, J.

We granted review in this case to determine whether a court-ordered mental evaluation violated the defendant's right against self-incrimination and the right to counsel under the United States and Tennessee Constitutions.

The Court of Criminal Appeals concluded that the defendant waived his right against self-incrimination by asserting an insanity defense and that the mental evaluation, which was ordered by the trial court and conducted pursuant to Tenn. R. Crim. P. 12.2(c), did not violate the right to counsel because it did not constitute a critical stage of the proceedings. The Court then affirmed the defendant's conviction for voluntary manslaughter.

We hold that where a defendant asserts a defense based on his or her mental state, a court-ordered mental evaluation does not violate the right against self-incrimination provided any statements made during the evaluation, and any "fruits" derived from such statements, are used by the prosecution only for impeachment or rebuttal of the defense. We also hold that the defendant does not have the right to counsel during the mental evaluation itself.

Accordingly, while we employ different reasoning, we affirm the judgment of the Court of Criminal Appeals for the reasons articulated below.

**BACKGROUND**

David Paul Martin, the defendant, and the victim, his second wife, had a tumultuous marriage marked by domestic disputes, physical violence, and numerous separations and reconciliations.

In May of 1991, the victim entered Martin's house, cursed his daughter, argued with him, and then said she wanted "to see him locked up again." According to one witness, Martin responded, "Well, here I go." Martin's

daughter, however, denied that Martin made such a statement. In any event, Martin knocked the victim from her chair and strangled her to death. He then showered, gave his children some keys and money, and waited for the police to arrive.

Martin was indicted for first-degree murder, and he filed notice of his intent to rely on a mental responsibility defense. The State moved, and the trial court ordered, that the defendant undergo a mental examination. Martin moved for an order to protect his right to counsel, his right against self-incrimination, his right to confrontation, his right to a fair trial, and also to assure that the examination was fairly administered. He specifically asked that his counsel or a defense expert be permitted to attend the mental examination.

At a hearing on Martin's motion for a protective order, Dr. Clifton Tennison, a psychiatrist with the Helen Ross McNabb Center, testified that:

> My opinion is that, to have anyone else present during psychiatric evaluations hinder and hampers the accuracy of the evaluation. The person will color and change their responses, based on who is in the room.

Following the hearing, the trial court entered an order compelling Martin to undergo a mental evaluation to determine his competency and his mental state at the time of the offense. The order provided that Tennison could determine who could be present during the evaluation and whether it would be recorded by video or audio tape.

Dr. Tennison decided that neither defense counsel nor experts employed by Martin would be present at the evaluation; however, he allowed the examination to be videotaped. When Tennison completed his examination, he sought permission for Dr. James Burrell, a clinical psychologist, to conduct an additional interview. The trial court authorized Burrell's involvement over

-3-

defense objection. Dr. Burrell did not allow defense counsel or defense experts to be present, nor did he allow the examination to be recorded.

After Martin renewed his notice to rely on a mental responsibility defense, the trial court entered an order which stressed the following:

> [N]o statements made by [the defendant] during the court ordered examination, or any fruits of those statements, shall be introduced at the trial of this cause unless and until the issue of mental responsibility is raised by [the defendant], or for impeachment purposes as provided by Rule 12.2(c), Tenn. R. Crim. P. Any party who intends to use such statements, or the fruits thereof, shall first make application to the bench outside the hearing of the jury prior to eliciting testimony or introducing evidence contemplated by this Order.

At trial, Martin presented the testimony of Dr. John Kandilakas, a clinical psychologist who treated him after the offense. Dr. Kandilakas testified that at the time of the offense, Martin was suffering from a major depressive disorder and had suffered a disassociative reaction. He concluded that Martin met the test for insanity pursuant to Tenn. Code Ann. § 39-11-501(a)(1991).[1] In rebuttal, Drs. Tennison and Burrell both agreed that Martin suffered major depression at the time of the offense. They concluded, however, that he did not meet the legal standard for insanity at the time he committed the offense.

After deliberation, the jury convicted Martin of the lesser offense of voluntary manslaughter. The Court of Criminal Appeals upheld the conviction on appeal, as well as the defendant's five-year sentence. We granted this appeal to

---

[1] At the time of the offense, insanity was a defense to prosecution if "at the time of such conduct, as a result of a mental disease or defect, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of law." Tenn. Code Ann. § 39-11-501(a)(1991). If the evidence raised a reasonable doubt as to the person's sanity, the burden of proof fell to the state to establish sanity beyond a reasonable doubt. State v. Jackson, 890 S.W.2d 436 (Tenn. 1994). Effective July 1, 1995, the law was amended to provide that the defendant must prove, by "clear and convincing evidence," that "as a result of a severe mental disease or defect, [he or she] was unable to appreciate the nature or wrongfulness of [his or her] acts." Tenn. Code Ann. § 39-11-501(a)(Supp. 1995).

determine whether the court-ordered mental evaluation violated the defendant's right to counsel or right against self-incrimination.

## MENTAL EXAMINATIONS

We begin our analysis by examining the procedural rule which governs court-ordered mental examinations of criminal defendants in Tennessee. The rule provides that if the defendant intends to rely on the defense of insanity at the time of the offense, he or she must notify the prosecution in writing prior to trial. Likewise, if the defendant intends to "introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of his or her guilt," he or she shall notify the prosecution in writing prior to trial. Tenn. R. Crim. P. 12.2(a) & (b).

Under the rule, the prosecution may request that the trial court order the defendant to undergo a "mental examination by a psychiatrist or the other expert designated for this purpose in the order of the court." The rule, however, limits the use of statements made by the defendant:

> No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except for impeachment purposes or on an issue respecting mental condition on which the defendant has introduced testimony.

Tenn. R. Crim. P. 12.2(c).

The defendant has challenged the entire process under this rule on constitutional and other procedural grounds, which the lower courts rejected.[2]

_____

[2] For example, the Court of Criminal Appeals determined that Rule 12.2(c) did not limit the State to a single examination or a single expert, that the defendant was not prejudiced by the inclusion of a competency evaluation, that the order did not shift the burden to prove insanity to the defendant, and that the order did not result in the application of the wrong standard for insanity.

Although we granted review in this case to address the right to counsel and right against self-incrimination issues, the defendant insists that the courts must exercise more supervision and control to ensure the fairness of the mental examination process and the reliability of its results. The State responds, in short, that Rule 12.2 sufficiently protects the interests of both the defendant and the prosecution.

Preliminarily, we recognize that there are obvious concerns generated when a defendant is compelled to undergo a mental examination at which he or she will, in all likelihood, discuss not only details of his or her life but also information about the charged offense. While numerous federal and state jurisdictions have confronted these issues, there has been little discussion in Tennessee and essentially no detailed analysis of the procedures set forth in Rule 12.2.

## SELF-INCRIMINATION

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, article I, § 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself."

These provisions protect the accused from being compelled to provide evidence of a testimonial or communicative nature. While we are free to extend greater protection to citizens under our state Constitution than is granted under the federal Constitution, we have traditionally interpreted article I, § 9 to be no broader than the Fifth Amendment. Moreover, we have never adopted a literal interpretation of the term "evidence" used in article I, § 9. See Delk v. State, 590

S.W.2d 435, 440 (Tenn. 1979); State v. Frazier, 914 S.W.2d 467, 473-74 (Tenn. 1996).

The defendant has vigorously argued that without adequate safeguards, the court-ordered mental examination process violated his right against self-incrimination under the United States and Tennessee Constitutions. U.S. Const. amend. V; Tenn. Const. art. I, §9. He maintains that the courts should balance the "competing interests at stake" by requiring (1) that the mental examination be monitored by defense experts and counsel, (2) that the examination be recorded, and (3) that the prosecution not have access to statements and information from the examination until such time as it may be used at trial for impeachment or rebuttal under Rule 12.2(c). On the other hand, the State argues that Rule 12.2(c) protects the defendant's right against self-incrimination by prohibiting the use of statements, or any fruits derived from the statements, except for impeachment or rebuttal of mental responsibility evidence introduced by the defense.

To support their respective positions, both the State and the defendant rely on the U.S. Supreme Court decision of Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In Estelle, the court ordered the defendant to be examined to determine his competency to stand trial. Later, during the sentencing phase of the capital trial, the State used the examining psychiatrist's testimony to prove an aggravating factor - the defendant's future dangerousness. The Estelle court held that the defendant, who had not raised the issues of competency or sanity, had not introduced evidence regarding sanity, and had not been given notice that the examination could be used against him in the penalty phase, was denied his Fifth Amendment right against self-incrimination. 451 U.S. at 466, 101 S.Ct. at 1874.

-7-

Significantly, the court in Estelle distinguished its facts from those which we now confront:

> Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. <u>When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only means it has of controverting his proof on an issue that he interjected into the case</u>. Accordingly, several Courts of Appeal have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist.

451 U.S. at 465, 101 S.Ct. at 1874 (emphasis added); <u>see</u> <u>also</u> <u>Buchanan v. Kentucky</u>, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). Accordingly, the limited holding of <u>Estelle</u> with respect to the Fifth Amendment is that "a criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." 451 U.S. at 468, 101 S.Ct. at 1875; <u>see</u> <u>also</u> <u>State v. Bush</u>, 942 S.W.2d 489 (Tenn. 1997).

By contrast, in the Tennessee case of <u>State v. Thompson</u>, 768 S.W.2d 239 (Tenn. 1989), <u>cert.</u> <u>denied</u>, 497 U.S. 1031 (1990), the criminal defendant initiated a psychiatric evaluation and introduced psychiatric evidence. The State used the psychiatric report to rebut the testimony of the defendant's expert in the sentencing phase of the capital trial. The defendant argued that use violated his right against self-incrimination. We held that the evidence was properly admitted to rebut the defense evidence and to impeach the opinion of the defense expert. <u>Id</u>. at 248.

Virtually every federal and state court jurisdiction has held that where a defendant raises an insanity defense, the Fifth Amendment right against self-incrimination is not violated by a court-ordered psychiatric examination or by the

prosecution's use of evidence from the examination to rebut evidence introduced by the defendant.[3]  Various rationales have been advanced by these courts: that the defendant waives the right by asserting an insanity defense; that a mental examination compels "physical" or "real" evidence, as opposed to "testimony" or "communications"; and that the right against self-incrimination is not applicable to statements concerning the issue of sanity.  See, e.g., United States v. Byers, 740 F.2d at 1111-1113 (discussing each rationale).

An important point, in our view, is one suggested in Estelle: "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case."  451 U.S. at 465, 101 S.Ct. at 1874.  The New Jersey Supreme Court expressed it this way:

> It would be most anomalous to say that a defendant may advance the defense of insanity, have himself examined by his own experts and then invoke the constitutional guarantees against self-incrimination for the purpose of preventing examination by the State. [Citation omitted].  It would be a strange doctrine, indeed, to permit a person charged with [a] crime to put in issue his want of mental capacity to commit it, and in order to make his plea invulnerable, prevent all inquiry into his mental state or condition.

State v. Whitlow, 210 A.2d 763, 767 (N.J. 1965).  Moreover, the right against self-incrimination is preserved in that any statements made during the examination, or fruits derived from the statements, may be used at trial only for impeachment or rebuttal of the mental responsibility defense.  Noggle v. Marshall, 706 F.2d at 1415-1416.

---

[3] See Presnell v. Zant, 959 F.2d 1524, 1534 (11th Cir. 1992); United States v. Byers, 740 F.2d 1104, 1115 (4th Cir. 1984); Noggle v. Marshall, 706 F.2d 1408, 1415 (6th Cir.), cert. denied, 464 U.S. 1010 (1983); United States v. Cohen, 530 F.2d 43, 48 (5th Cir.), cert. denied, 429 U.S. 855 (1976); State v. Schackart, 858 P.2d 639, 645 (Ariz. 1993), cert. denied, 511 U.S. 1046 (1994); State v. Steiger, 590 A.2d 408, 416 (Conn. 1991); White v. United States, 451 A.2d 848, 852 (D.C. App. 1982); Braswell v. State, 371 So.2d 992, 997 (Ala. Crim. App. 1979), among others.

We conclude that Rule 12.2(c) safeguards the defendant's right against self-incrimination under the United States and Tennessee Constitutions. The defendant must initiate the process by providing notice of his or her intent to rely on a mental responsibility defense and to introduce expert testimony on the issue. The prosecution may request, and the trial court may order, that the defendant undergo a psychiatric examination so as to inquire further into the defendant's mental state. The prosecution's use of the defendant's statements, or the "fruits" derived from such statements, is expressly limited to impeachment or rebuttal of the evidence concerning mental state introduced by the defendant. In other words, such material may not be used by the prosecution to prove the guilt of the defendant and may not be used if the defense does not introduce testimony at trial on mental condition. Moreover, because the defendant likewise has access to the information generated by the examination, he or she is free to object in limine to any material on the basis of privilege, relevance, or any other ground. Tenn. R. Crim. P. 12.2(b).

These limitations, in our view, achieve the balancing of interests stressed not only in Estelle, supra, but also in virtually every other case decided on the issue. Accordingly, we reject the defendant's argument that further safeguards, such as recording the examinations or allowing third persons to monitor the examinations, are necessary to preserve the right against self-incrimination. We also reject the defendant's assertion that the prosecution should not have access to any information from the examination until needed at trial "for impeachment or rebuttal." Such a restriction defeats the balancing outlined above and also begs the question of how the prosecution would recognize appropriate impeachment or rebuttal without access to the material.

We emphasize, however, that the trial court ultimately bears the responsibility to ensure that the prosecution's use of the information complies

with Rule 12.2(c). Here, the trial court's order, which tracked the restrictions set forth in the rule and also required a jury out hearing prior to any intended use of the statements, was appropriately designed to meet this responsibility. A review of the record, moreover, reveals that no statements or evidence were admitted at trial in violation of Rule 12.2(c).

In summary, when a defendant indicates his or her intent to rely on a mental responsibility defense, the trial court, on motion of the district attorney, may order a mental examination. No statements made by the defendant, material derived from such statements, or expert testimony based on such statements, are admissible at trial except for impeachment or rebuttal of the mental responsibility evidence introduced by the defense. When these restrictions are properly followed, as in this case, the proceedings under Rule 12.2(c) do not violate the defendant's right against self-incrimination under the Constitutions of the United States or the State of Tennessee.

## RIGHT TO COUNSEL

Both the United States and Tennessee Constitutions require the presence of counsel to represent a defendant not only at trial but also at "critical stages" of the proceedings "where counsel's absence might derogate from the accused's right to a fair trial." The purpose underlying the right is to "preserve the defendant's basic right to a fair trial as affected by his [or her] right meaningfully to cross examine the witnesses . . . and to have effective assistance of counsel at the trial itself." United States v. Wade, 388 U.S. 218, 226-27, 87 S.Ct. 1926, 1931-32, 18 L.Ed.2d 1149 (1967).

The defendant asserts that the court-ordered mental examination was a "critical stage" of the proceedings requiring the presence of counsel under the United States and Tennessee Constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. The State maintains that the mental examination is not a "critical stage" of the proceedings and moreover, that counsel's presence would impair or limit the effectiveness of the examination.

In Estelle v. Smith, supra, the Supreme Court held that the Sixth Amendment right to counsel was violated when the defendant "was denied the assistance of his attorneys in making the significant decision of whether to submit to the [psychiatric] examination and to what end the psychiatrist's findings could be employed." Although the court said that the psychiatric interview "proved to be a 'critical stage' against" the defendant, its holding was limited to the question of whether the defendant was entitled to consult with counsel prior to the examination. The court did not find a Sixth Amendment right to have counsel at the examination and, in fact, noted with apparent approval the Court of Appeals' finding that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." 451 U.S. at 470-71, 101 S.Ct. at 1877, n. 14.

-12-

In later clarifying Estelle, the court stressed that "for a defendant charged with a capital crime, the decision whether to submit to a psychiatric examination designed to determine his future dangerousness is 'literally a life and death matter' which the defendant should not be required to face without 'the guiding hand of counsel.'" Satterwhite v. Texas, 486 U.S. 249, 254, 108 S.Ct. 1792, 1796, 100 L.Ed.2d 284 (1988).  Similarly, the court said that "[w]hile it may be unfair to the state to permit a defendant to use psychiatric testimony without allowing the state a means to rebut that testimony, it certainly is not unfair to the state to provide counsel with notice before examining a defendant concerning future dangerousness."  Powell v. Texas, 492 U.S. 680, 685, 109 S.Ct. 3146, 3150, 106 L.Ed.2d 551 (1989); see also State v. Bush, 942 S.W.2d 489 (Tenn. 1997).

While the United States Supreme Court has not directly addressed the issue, a substantial majority of state and federal jurisdictions have held that a defendant does not have the right to counsel during a psychiatric examination.[4] In United States v. Byers, supra, for instance, the court distinguished the need for counsel before an examination, as opposed to during the examination itself, by pointing out that before examination

> [the defendant] was confronted by the procedural system at the point at which he had to decide whether to raise the insanity defense, a determination that would have several legal consequences, including the likelihood of a court order that he undergo a psychiatric examination. . . .
>
> . . . .

---

[4]  United States v. Byers, 740 F.2d at 1121; United States v. Cohen, 530 F.2d at 48; United States v. Baird, 414 F.2d 700, 711 (2d Cir. 1969), cert. denied, 396 U.S. 1005 (1970); People v. Mahaffey, 651 N.E.2d 1055, 1064 (Ill. 1995), cert. denied, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995); State v. Schackart, 858 P.2d at 646; State v. Steiger, 590 A.2d 408, 420 (Conn. 1991); Grandison v. State, 506 A.2d 580, 593 (Md. 1986); State v. Hardy, 325 S.E.2d 320, 322 (S.C. 1985); State v. Brown, 681 P.2d 1071, 1073 (Kan. 1984); Strickland v. State, 275 S.E.2d 29, 32 (Ga. 1981); see also Annotation, Right of Accused in Criminal Prosecution to Presence of Counsel at Court-Appointed or Approved Psychiatric Examination, 3 A.L.R.4th 930 (1981 & Supp. 1996).  Conversely, a minority of courts have held that counsel should either be present or receive a recording of the examination.  State v. Hutchison, 766 P.2d 447 (Wash. 1989); Houston v. State, 602 P.2d 784 (Alaska 1979); Shepard v. Bowe, 442 P.2d 238 (Or. 1968).

> But at the psychiatric interview itself, [the defendant] was not
> confronted by the procedural system; he had no decisions in the
> nature of legal strategy or tactics to make -- not even, as we have
> seen, the decision whether to refuse, on Fifth Amendment grounds,
> to answer the psychiatrist's questions. The only conceivable role
> for counsel at the examination would have been to observe. . . .

740 F.2d at 1118-1119.


Similarly, numerous courts have considered the "pragmatic" effect that counsel's presence, instead of rendering assistance, would impede or inhibit the examination. Moreover, a number of courts have stressed that the defendant's rights to a fair trial and to confrontation are sufficiently preserved by counsel's opportunity to interview the witnesses, review the results and information generated by the examination, conduct cross-examination of the psychiatric witnesses, and introduce defense witnesses. See, e.g., State v. Schackart, 858 P.2d at 646-47.[5]


Accordingly, we agree with the courts which have distinguished the "critical stage" prior to a psychiatric examination from the examination itself. We are convinced that the examination differs in purpose and procedure from other stages of the adversarial system, and that counsel's physical presence in a strictly passive, observational capacity, is not necessary to protect the defendant's related rights to a fair trial and to confront witnesses. In particular, the defendant has access to the information and results generated by the mental examination, as well as the right to interview, subpoena, and cross-examine the experts with regard to their methodology, opinions, and results.


Thus, we conclude that the Sixth Amendment of the U.S. Constitution and article I, § 9 of the Tennessee Constitution do not require the presence of

---

[5] See also Heflin v. State, 640 S.W.2d 58, 66 (Tex. App. 1982); People v. Larsen, 385 N.E.2d 679, 683 (Ill. 1979), cert. denied, 444 U.S. 908 (1979); White v. United States, 451 A.2d at 854; People v. Mahaffey, 651 N.E.2d at 1064; State v. Hardy, 325 S.E.2d at 322; State v. Brown, 681 P.2d at 1073; Tenn. R. Evid. 705.

-14-

counsel during a court-ordered mental examination. It follows that the trial court's order, which did not specifically permit counsel to attend and monitor the mental examination, did not violate the defendant's right to counsel.

Although we hold that recording the mental examination is not constitutionally required, our holding should not be interpreted as prohibiting the trial court from enhancing the integrity of the trial. We fully endorse and encourage recording the psychiatric examination as a simple and effective means to preserve evidence and to enhance the accuracy and reliability of the truth-seeking function of the trial. See, e.g., State v. Jackson, 298 S.E.2d 866, 873 (W.Va. 1982). A verbatim recording of the mental examination process would enhance the integrity of the trial without the potential hindrance of allowing counsel to be present during the examination itself. Accordingly, upon a showing that such a safeguard is feasible and not unduly intrusive in a given case, the trial court has the discretion to require video or audio taping of the psychiatric examination to assist both sides in preparing for trial.

Similarly, the trial court has the authority to designate in its order not only the expert who is to perform the examination, but also the objective of the examination. The New Jersey Supreme Court articulated our purpose best in State v. Whitlow, supra: "[T]he psychiatric interview is a crucial diagnostic tool, [and] the judicial aim must be to make it an effective instrument of justice." 210 A.2d at 772. This aim cannot be fully achieved unless the trial court actively oversees the process and ensures compliance with Tenn. R. Crim. P. 12.2.

## CONCLUSION

For the foregoing reasons, we conclude that the court-ordered mental examination did not violate the defendant's right against self-incrimination or right

to counsel under the United States and Tennessee Constitutions.   The costs of

this appeal are taxed to the defendant-appellant, David Paul Martin.

_____
RILEY ANDERSON, JUSTICE

**Concur:**
Birch, C.J.
Drowota, Reid, and Holder, JJ.