# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

SEPTEMBER 1997 SESSION



**FILED**

**February 18, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9610-CC-00457 |
| | ) | |
| vs. | ) | Grundy County |
| | ) | |
| **SAMUEL D. BRADEN,** | ) | Hon. Thomas W. Graham, Judge |
| | ) | |
| Appellant. | ) | (Voluntary Manslaughter) |
| | ) | |

FOR THE APPELLANT:

HOWELL G. CLEMENTS  (trial & appeal)
JANE M. STAHL (appeal)
Attorneys at Law
801 Pine St.
Chattanooga, TN  37401-1749

PAUL CROSS (trial)
CATHERINE CLARK (trial)
P.O. Box 99
Monteagle, TN  37356

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

DARYL J. BRAND
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

J. MICHAEL TAYLOR
District Attorney General

THOMAS D. HEMBREE
Asst. District Attorney General
2d Floor, Lawyers Bldg.
Jasper, TN  37347

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

## OPINION

Samuel D. Braden appeals his conviction of the voluntary manslaughter of his wife. Braden received his conviction following a jury trial in the Grundy County Circuit Court and was sentenced to serve six years in the Department of Correction. In this direct appeal, Braden raises three issues for our consideration:

1. Whether the trial court erred in excluding evidence that the victim was having an affair, possessed birth control pills and condoms despite the defendant having had a vasectomy, and did not love the defendant.

2. Whether the evidence sufficiently supports his conviction of voluntary manslaughter.

3. Whether the trial court imposed the proper sentence.

Following a thorough review of the record, the briefs and the oral arguments of the parties, we affirm the judgment of the trial court.

Samuel Braden, the defendant, and Angela Braden, the victim, married in 1981. Twin daughters were born of this union. Mrs. Braden also had a son from an earlier marriage who lived in the Braden household. Apparently, the Bradens had experienced marital discord for some time prior to March 16, 1995.

On that date, the victim informed the defendant that she was leaving the marital home; therefore, he should be home when the children arrived home from school that afternoon. The defendant went fishing and consumed several beers during the day, returning home in the afternoon hours as he was instructed to do by his wife. Upon his arrival, the defendant found the victim still at home, packing the defendant's belongings. Discussion ensued, with the victim expressing her displeasure with the defendant's consumption of alcohol. The victim took some of the defendant's belongings she had packed and placed them in the defendant's truck, and the defendant brought them back into the house. Apparently, the defendant's belongings were carried out to the truck by the victim and back into the house by the defendant several times. Ultimately, the defendant and the victim had

**2**

a confrontation in and around the carport which ended in the victim receiving a fatal injury from a gunshot wound to the neck.

Shortly after the shooting, the defendant was arrested and charged with first-degree murder. At trial, the defendant claimed that the victim pointed a handgun at him, and the gun went off twice as he and the victim fell into a flower bed and struggled for control of the gun. Essentially, his position is based upon self-defense and accident. The state's position at trial was that the shooting was not accidental. At the conclusion of the state's proof, the trial court granted the defendant's motion for judgment of acquittal on the charge of first-degree murder. At the conclusion of all the proof, the trial court submitted the issues of second-degree murder, voluntary manslaughter and criminally negligent homicide to the jury. The jury returned a guilty verdict on the offense of voluntary manslaughter and fixed a fine of $10,000.00.

I

In his first issue, the defendant contends the trial court committed error of prejudicial dimensions by prohibiting him from introducing evidence that the victim was having an affair, was no longer in love with him and was taking birth control pills even though the defendant had undergone a vasectomy. According to the defendant, this evidence was essential to his defense because it established the victim's motive for initiating a confrontation with him, thereby proving his claim of self defense. The trial court found this had, at best, only slight probative value, which was substantially outweighed by the danger of creating unfair prejudice in the minds of the jury.[1] See Tenn. R. Evid. 403.

The evidence, as developed outside the jury's presence, is as follows.

---

[1]The trial court made a limited ruling, indicating it would allow the defendant to introduce the evidence "if it is close in time and related to something that would amount to a threat or something of that nature, but if it's just idle discussion about an emotional affair that may have been told to a friend days, weeks, and months prior" it would not be allowed.

3

Diane Braden, the victim's sister in law,[2] testified that the victim admitted in February or March 1995 to having an adulterous affair with Diane Braden's first cousin, David Wayne Burnett. The victim also admitted she was taking birth control pills because of her sexual activity with Burnett and that she was considering divorcing the defendant. The defense also proffered a stipulation that the defendant had undergone a vasectomy and that the purpose of a vasectomy is to prevent pregnancy from occurring in the female sexual partner. Likewise, the defendant testified that he found a box of condoms in his wife's effects after her death, as well as a package of birth control pills bearing the date February 18, 1995. Most of the birth control pills had been taken.

The court received the proffered testimony of Burnett, who claimed to have had a brief affair with the victim in early 1995; notably, he testified he and the victim engaged in sexual intercourse on two occasions and that they used condoms. Burnett said, however, he had not seen the victim for some weeks prior to her death.[3] He testified that he and the victim were no longer seeing each other at the time of her death because the victim told him she was trying to work things out with her husband. According to Burnett, he and the victim had no plans to see each other in the event the victim was unable to salvage her marriage.

The defendant claims this evidence is admissible under one or more of the following theories: (1) as the victim's statement against interest, Tenn. R. Evid. 804(b)(3), (2) as evidence of the victim's state of mind, Tenn. R. Evid. 803(3), and (3) as evidence, otherwise hearsay in character, which must be admitted in order to preserve the defendant's due process right to present witnesses in his own defense. See Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038 (1973).

---

[2]Diane Braden is the wife of Louis "Buster" Braden, the defendant's brother.

[3]Burnett admitted he was not good with dates. He testified he had not seen the victim, as of the first part of March 1995, for "several weeks," and for "probably a month before her death." Read as a whole, his testimony indicates he and the victim had not seen each other for a period of approximately two to four weeks.

4

In analyzing these evidentiary and constitutional questions, we begin with a determination of whether the proffered evidence is relevant. Irrelevant evidence is not admissible. Tenn. R. Evid. 402; see Rock v. Arkansas, 483 U.S. 44, 55, 107 S. Ct. 2704, 2711 (1987) (characterizing the Chambers due process right as "the right to present relevant testimony"). In the case at bar, the challenged evidence amounts to testimony that the victim had an affair shortly before her death. However, she broke off the relationship to try to work things out with her husband. After ending the affair, she had no more contact with her former lover, and there were no plans to resume the relationship if the victim's marital reconciliation proved unsuccessful. The record is totally devoid of any evidence that the victim planned to turn her husband out of the marital home or initiate an armed confrontation with him in order to facilitate a return to her former lover. Likewise, the victim's possession of birth control paraphernalia and profession not to love the defendant do nothing to make it more probable that she initiated a violent confrontation with him which culminated in her death.[4] Contrary to the defendant's argument, these facts are not probative of the victim's state of mind because the defendant's theory assumes a premise (that the victim was the first aggressor in order to facilitate resumption of the affair) that the proffered evidence fails to support. Thus, we fail to see the relevance of these facts.[5] Because we find the evidence irrelevant, it is unnecessary for us to determine whether it is admissible under exceptions to the hearsay rule.

---

[4]Furthermore, the defendant's proffer included evidence that the victim told one of her confidants that she had been to church because she had done something of which she was ashamed and which she would not do again. The defendant sought to offer this evidence as probative of the victim's alleged affair. However, if believed, this evidence undercuts the defendant's self-defense theory. It would show that the victim was remorseful for her affair, not that she was eager to resume it and needed her husband out of the way in order to do so.

[5]Although our determination that this evidence is irrelevant pretermits our inquiry into the constitutionality of excluding the evidence under Chambers, we note as an aside that the defendant failed to raise a constitutional challenge to the exclusion of the evidence in his motion for new trial. As such, the issue has been waived. State v. Len Martucci, No. 213 (Tenn. Crim. App., Knoxville, Apr. 3, 1990), perm. app. denied (Tenn. 1990); Tenn. R. App. P. 3(e).

In sum, the trial court did not abuse its discretion in excluding this evidence.

## II

In his second issue, the defendant claims the evidence insufficiently supports his conviction. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d

608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

The crime of voluntary manslaughter "is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211 (1997). In attacking the sufficiency of the evidence as to this crime, the defendant essentially argues he acted in self-defense. Specifically, the defendant claims the proof of his intent to kill his wife is "doubtful." First, we note that the jury passed on and rejected the defendant's self-defense claim. In the light most favorable to the state, this record more than sufficiently supports this conclusion. See State v. Fugate, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988) ("Whether a homicide is excusable because done in defense of person presents a classic question for jury determination.") (citations omitted). Second, the circumstantial evidence strongly supports a finding the defendant intentionally or knowingly killed his wife. The victim and the defendant were engaged in a disagreement which escalated from words to physical force to deadly force. The trigger on the gun with which the victim was shot required the shooter to exert approximately four times more force than the trigger on the average handgun in order to cause the gun to discharge. Two shots, fired in rapid succession, struck the victim. By the defendant's own admission, he did not check his wife for signs of life as she lay wounded. When one of the defendant's daughters picked up the telephone to call for emergency assistance, he prevented her from making the call. Rather than

**7**

summoning help himself, the defendant waited until he had traveled to his parents' house, and his mother called for an ambulance for the victim. From the facts, a rational jury could, and did, find the defendant guilty of voluntary manslaughter beyond a reasonable doubt. Cf. State v. Kendricks, 947 S.W.2d 875, 880 (Tenn. 1996) (sufficiency of evidence of defendant's intent to commit first degree murder supported, in part, by evidence defendant failed to render assistance to victim); State v. Marquetia Brown, No. 01C01-9509-CR-00316 (Tenn. Crim. App., Nashville, Dec. 13, 1996) (jury within its province in rejecting defendant's claim of self-defense and returning conviction of second degree murder), perm. app. dismissed (Tenn. 1997); State v. William Roberts, No. 01C01-9110-CC-00296, slip op. at 5 (Tenn. Crim. App., Nashville, July 15, 1993) (even if jury accredited defendant's claim the victim was the first aggressor during struggle for weapon, evidence was nevertheless sufficient to find defendant guilty of voluntary manslaughter), perm. app. denied (Tenn. 1993).

We find the defendant's complaint lacking in merit.

**III**

In his final issue, the defendant protests the trial court's imposition of a six-year incarcerative sentence. He claims the court erred in sentencing him to the maximum term available and in failing to consider an alternative sentence.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the

**8**

defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

The defendant argues in his brief that our review should be de novo. We find that an enhancement factor has been misapplied, and that pertinent facts were not found relative to the alternative sentencing, and for these reasons, our review is not accompanied by the presumption of correctness.

**A**

The record of the sentencing hearing and the court's order reflect that the court found the presence of both enhancement and mitigating factors. The enhancement factors were:

(1)    The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(9)    The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(10)    The defendant had no hesitation about committing a crime when the risk to human life was high;

Tenn. Code Ann. § 40-35-114(1), (9), (10) (1997). The court likewise found three mitigating factors based on the evidence presented at the sentencing hearing:

(3)    Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(8)    The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;

(11)    The defendant, although guilty of the crime, committed the offense under such unusual

> circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct.

Tenn. Code Ann. § 40-35-113(3), (8), (11) (1997). The court accorded great weight to each of the three enhancement factors. It further evaluated mitigating factor (11) as the only one of the applicable factors with "any true significance."

The defendant concedes the applicability of enhancement factors (1) and (9) but challenges the court's application of factor (10). He also claims the court erred in failing to apply two additional mitigating factors, that he acted under strong provocation, and that he harbors genuine remorse for his crime. See Tenn. Code Ann. § 40-35-113(2), (13) (1997).

The trial court found enhancement factor (10) applicable based upon the jury's finding the shooting was not an accident and the fact that multiple shots were fired. The state urges us to affirm the trial court's application of the factor because the defendant's daughters were inside the house when the defendant shot the victim outside in the carport area. We disagree with the trial court and the state as a matter of law. It is well settled in Tennessee that this enhancement factor is generally inapplicable in sentencing in voluntary manslaughter cases where the only "risk" imposed was to the victim of the homicide. See, e.g., State v. Mitzi Ann Martin, No. 02C01-9408-CC-00170, slip op. at 21 (Tenn. Crim. App., Jackson, Aug. 30, 1995), perm. app. denied (Tenn. 1996); State v. David Keith Daugherty, No. 03C01-9203-CR-00082, slip op. at 9 (Tenn. Crim. App., Knoxville, Aug. 27, 1993); see also State v. Randy Cotham, 01C01-9509-CC-00287, slip op. at 8-9 (Tenn. Crim. App., Nashville, Dec. 5, 1996) (attempted voluntary manslaughter), perm. app. denied (Tenn. 1997); State v. Makoka, 885 S.W.2d 366, 370 (Tenn. Crim. App. 1994) (attempted first degree murder and attempted second degree murder). However, the factor may be applied where the defendant's actions create risk to one or more individuals other than the victim. State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); Makoka, 885 S.W.2d at 373. We believe the trial court

**10**

erred in applying this factor in this case. Though the defendant's daughters were inside the house, there is no evidence of record that they were likely to come outside during the criminal episode which resulted in the victim's death. When the children arrived home, the defendant told them to go inside and do their homework. They complied with his directive and did not come outside until they heard the gunfire. See David Keith Daugherty, slip op. at 9 (enhancement factor (10) inappropriate where there is no evidence individuals other than the victim were "expected or even likely to appear"). Moreover, we find no authority to support the trial court's determination that this factor is appropriate simply because the defendant fired multiple gunshots.[6] But cf. State v. Charles Reagan, No. 2 (Tenn. Crim. App., Jackson, Feb. 1, 1989) (under prior sentencing act, enhancement factor accounting for defendant's lack of hesitation in committing a crime where the risk to human life was high appropriate when defendant fired five shots into victim's body at very close range), perm. app. denied (Tenn. 1989). As such, we believe the trial court erred as a matter of law in applying this enhancement factor.

With respect to the mitigating factors the defendant claims were overlooked, the trial court declined to apply factor (2), that the defendant acted under strong provocation, because the jury had already accounted for provocation in its verdict of voluntary manslaughter as opposed to a conviction for the greater crime of second-degree murder. However, contrary to the trial court's conclusion, there is no per se prohibition against "double mitigation," that is, applying mitigating factor (2) after the jury extended leniency to a defendant by finding him guilty of the lesser offense of voluntary manslaughter. See, e.g., State v. Lisa D. Caslin, No. 03C01-9605-CR-00202, slip op. at 6 (Tenn. Crim. App., Knoxville, May 1, 1997), pet. for perm. app. filed (Tenn. July 2, 1997); State v. Michael D. Frazier, No. 03C01-9602-CR-00084, slip op. at 7-8 (Tenn. Crim. App., Knoxville, June 4, 1997); State v. Randy Cotham, No. 01C01-9509-CC-00287, slip op. at 9-10 (Tenn. Crim. App., Nashville, Dec. 5, 1996), perm. app. denied (Tenn. 1997). Of course, "[a]cting

---

[6]The state does not urge the correctness of this determination on appeal.

**11**

under strong provocation may not be an appropriate mitigating factor in circumstances in which the jury had already accounted for that factor in its verdict and in which additional consideration at sentencing is not merited." David Keith Daugherty, slip op. at 10; see State v. David Paul Martin, No. 03C01-9412-CR-00448, slip op. at 30-31 (Tenn. Crim. App., Knoxville, Oct. 13, 1995), aff'd on other grounds, 950 S.W.2d 20 (Tenn. 1997); see also Randy Cotham, slip op. at 9-10. In that regard, it is noteworthy that the voluntary manslaughter statute requires a finding of "adequate provocation," whereas the mitigating factor requires a finding of "strong provocation." Compare Tenn. Code Ann. § 39-13-211(a) (1997) with Tenn. Code Ann. § 40-35-113(2) (1997). In the present case, provocation is not an appropriate mitigating factor, albeit for a different reason. Even though the trial court should have considered it as an available mitigating factor, the defendant maintained the victim's death was the result of his justified self-defense and/or accident. His theory does not embrace provocation as an operative factor. There is no error in failing to apply mitigating factor (2). See State v. McKinzie Monroe Black, No. 01C01-9401-CC-00006 (Tenn. Crim. App., Nashville, July 14, 1995).

The defendant also urges us to find fault with the trial court's failure to find as an additional mitigating factor that the defendant harbored genuine remorse for his crime. See Tenn. Code Ann. § 40-35-113(13) (1997). The trial court found that the record did not support "any significant showing of remorse." The defendant chose not to testify at the sentencing hearing; thus, he declined the opportunity to express his remorse to the trial court. At trial, the defendant claimed "the only mistake" he would admit making on the day he shot and killed his wife was not letting his daughter call 911 immediately after the shooting. While there is also evidence that the defendant apologized to his daughters for killing their mother, cried over his wife's death, and visited her grave, this evidence does not overcome the trial court's determination as a trier of fact. See State v. Joseph Lebron Derrick, No. 03C02-9601-CR-00036, slip op. at 11 (Tenn. Crim. App., Knoxville, Apr. 1, 1997) (remorse properly not applied as mitigating factor where defendant did not

**12**

testify at sentencing hearing and did not comment on his alleged remorse during his trial testimony), perm. app. denied (Tenn. 1997); State v. Michael Robinson, No. 03-C-01-9510-CC-00303, slip op. at 24 (Tenn. Crim. App., Knoxville, June 24, 1997) (trial court is in the best position to observe the defendant's mood and mannerisms in evaluating whether his alleged remorse should qualify as a mitigating factor), pet. for perm. app. filed (Tenn. Aug. 8, 1997, Aug. 15, 1997, Aug. 20, 1997, Aug. 21, 1997, Aug. 22, 1997) (numerous defendants).  Thus, we find the trial court appropriately denied the application of these proposed mitigating factors.

In summary, the trial court incorrectly applied enhancement factor (10).  Although the trial court heavily and equally weighed all three enhancement factors in reaching its sentencing determination, we must determine the appropriate sentence where one of three heavily weighted enhancement factors is removed and there are mitigating factors accorded comparatively less weight.  It bears noting that this court, in conducting de novo appellate review, does not weigh the applicable factors mathematically according to the number of mitigating factors.  A case-by-case approach underlies the sentencing law and "'[a]ny case-by-case approach will embody discretion, since all of the appropriate factors and circumstances must be weighed and considered as a whole for the disposition of each case.'"  Ashby, 823 S.W.2d at 168 (quoting State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)) (emphasis added).

In general, both of the two applicable enhancement factors, (1) (prior criminal record or behavior) and (9) (use of a firearm during the commission of the offense), have been previously accorded significant weight by this court.  See State v. Milton S. Jones, Jr., No. 02C01-9503-CR-00061, slip op. at 8 (Tenn. Crim. App., Jackson, Mar. 7, 1997) (prior misdemeanor conviction and misdemeanor behavior sufficient alone to support a one-year sentence enhancement), pet. perm. app. filed (Tenn. May 6, 1997); David Paul Martin, slip op. at 31-32 (factor (1) as single enhancement factor supports a two-year enhancement); see also State v. Maurice

**13**

Garner, No. 02C01-9508-CR-00223, slip op. at 12-13 (Tenn. Crim. App., Jackson, May 19, 1997) (assigning great weight to factor (9) along with factors (1) and (10) supporting a five-year enhancement for second-degree murder), pet. perm. app. filed (Tenn. Aug. 20, 1997).

In the present case, factors (1) and (9) should be weighed heavily, considering that the defendant's criminal record of seven misdemeanors includes two weapons charges.[7] These factors are sufficient, not only to elevate the sentence to the maximum ceiling, but also to firmly embed the sentence in the ceiling. Given this conclusion and the trial court's proper finding that the only mitigating factor entitled to significant weight was factor (11), that the defendant lacked a sustained intent to violate the law, we conclude that the maximum sentence of six years is supported by the record and is the appropriate sentence in this case.

**B**

The remaining issue is whether the trial court properly denied alternative sentencing.[8] Again, we review this issue de novo without the presumed correctness of the trial court's sentencing determination.

As a Range I, Class C felon, the defendant is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, he is eligible for probation. See Tenn. Code Ann. § 40-

---

[7]The record of one of the weapons charges consists of the presentence report narrating the defendant's admission that he received Tracy City convictions for weapon and marijuana possession in "the late 1970's." No record of such convictions from the municipal court in Tracy City were found. The defendant was convicted of possession of a pistol by the Grundy County Circuit Court in 1994. Most of the defendant's remaining convictions were alcohol related.

[8]Inexplicably, the state has chosen not to adequately respond to this argument in its brief. We take this opportunity to remind litigants standing in the shoes of the appellee of their obligation to provide argument, citation to authorities and appropriate references to the record in their briefs to the appellate courts. See Tenn. R. App. P. 27(b).

35-303(a) (1997). In determining that the defendant should serve his sentence in the Department of Correction, the trial court relied on Code section 40-35-103(1)(B). That section provides that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses[.]" Tenn. Code Ann. § 40-35-103(1)(B) (1997).

Despite its reliance on this consideration as the basis for imposing incarceration, the defendant argues, the trial court failed to make a finding that the nature and circumstances of the offense were "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," outweighing all other factors favoring an alternative sentence. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). The defendant is correct that the trial court failed to make a Bingham/Hartley/Travis finding. However, the trial court's explanation of its basis for applying deterrence as a sentencing consideration is instructive.

> The parties were not the same in size and strength. Two shots were fired. A mother is dead. Two children have no mother and have a father who is guilty of the death of the mother. Another child . . . lost his mother. . . . The seriousness of the offense and in this case it would seem that under the facts that this is certainly a serious offense and must be dealt with seriously.

Obviously, by placing emphasis on the status of the victim as the mother of young children rather than upon the manner of the killing, the trial court implicitly found the nature and circumstances of the defendant's crime offensive and excessive. Furthermore, the trial judge spoke about the leniency extended by the jury. He said,

> I think the jury was compassionate in this case for the defendant by actually getting to the point of finding this to be voluntary manslaughter. I think it was possible on the proof that that happened and they did that, and so we're in a situation where the maximum sentence . . . is not particularly lengthy . . . ..

"This factor [of jury leniency] is properly considered by the court in finding that confinement is necessary under section 103(1)(B)." State v. Steven A. Bush, No. 01C01-9605-CC-00220, slip op. at 9 (Tenn. Crim. App., Nashville, June 26, 1997)

**15**

(citing State v. Fredrick Dona Black, No. 03C01-9404-CR-00139, slip op. at 3-4 (Tenn. Crim. App., Knoxville, April 6, 1995) and State v. Nealy Walter Perry, No. 89-133-111, slip op. at 4-5 (Tenn. Crim. App., Nashville, Aug. 29, 1990) (Dwyer, J., concurring and dissenting)), pet. for perm. app. filed (Tenn. Aug. 20, 1997); see also Michael D. Frazier, slip op. at 12. Thus, the trial court did not err in denying alternative sentencing based upon section 40-35-103(1)(B).

Having so found, we find it unnecessary to address the defendant's argument that the record did not contain any proof that confinement of the defendant would have a deterrent effect on crime in the community. See Tenn. Code Ann. § 40-35-103(1)(B) (1997).

In conclusion, we affirm the defendant's conviction and sentence.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
THOMAS T. WOODALL, JUDGE