IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

FILED

March 9, 1998

FOR PUBLICATION

Cecil Crowson, Jr.
Appellate Court Clerk

Filed:  March 9, 1998

STATE OF TENNESSEE,                    )
                                       )
            Appellee                   )
                                       )
                                       )        KNOX CRIMINAL
                                       )
Vs.                                    )
                                       )        HON. RICHARD BAUMGARTNER,
                                       )               JUDGE
                                       )
THOMAS DEE HUSKEY,                     )
                                       )
            Appellant.                 )        No. 03S01-9610-CR-00096

**For Appellant:**

Herbert S. Moncier
Knoxville, Tennessee

Gregory P. Isaacs
Knoxville, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

John H. Baker, III
Assistant Attorney General
Nashville, Tennessee

At Trial:
Randall Eugene Nichols
District Attorney General
Knoxville, Tennessee

Professor Neil Cohen
Special Assistant Attorney General
Knoxville, Tennessee

# O P I N I O N

TRIAL COURT AFFIRMED                                    ANDERSON, C.J.

We granted interlocutory review in this death penalty case to determine whether the trial court's orders compelling the defendant to undergo a mental examination in accordance with Tenn. R. Crim. P. 12.2(c), and requiring disclosure to the prosecution of material related to the examination, violated the right to counsel or the right against self-incrimination under the United States or Tennessee Constitutions.

We recently held that where a defendant asserts an insanity defense or seeks to introduce testimony with regard to a mental condition, a court-ordered mental evaluation, and disclosure of materials from the evaluation, does not violate the right against self-incrimination provided that any statements made by the defendant during the evaluation, and any "fruits" derived from such statements, are admissible at trial against the defendant only for impeachment or rebuttal of an issue respecting mental condition on which the defendant has introduced testimony. We also held that a defendant does not have the right to the physical presence of counsel during a court-ordered examination. State v. Martin, 950 S.W.2d 20 (Tenn. 1997); see Tenn. R. Crim. P. 12.2.

After reviewing the record, we conclude that our ruling in Martin controls much of the outcome of this case, and that the trial court's orders did not violate the defendant's rights under the United States or Tennessee Constitutions. The trial court's judgment is affirmed and the case is remanded for trial.

## BACKGROUND

The defendant, Thomas Dee Huskey, was indicted in case number 51903 for four counts of first-degree murder committed against four victims: Patricia Rose Anderson, Patricia Ann Johnson, Darlene Smith, and Susan East

Stone.[1]  The prosecution filed notice of its intent to seek the death penalty for each offense.  This appeal pertains solely to the four capital charges in case number 51903; however, we will review the salient portions of the entire record to place the issues in procedural context.

In March and April of 1994, Huskey filed notice of his intent to use expert testimony with regard to a mental condition and to rely on an insanity defense with respect to all the cases.  When the State filed a motion to compel Huskey to undergo a mental examination under Rule 12, Huskey moved for a protective order requiring, among other things, that counsel and a defense expert be permitted to attend the examination and that the examination be recorded.  Huskey argued that these measures were necessary to preserve his right to counsel and his right against self-incrimination.

The trial judge, Judge Ray Lee Jenkins, denied the motion for a protective order and entered three written orders in all cases compelling Huskey to undergo a mental examination at the Helen Ross McNabb Mental Health Center in Knoxville.  Although orders were entered on May 17, 1994, May 8, 1995, and May 11, 1995, no examinations were conducted because the defense refused.  Judge Jenkins later ruled that because of the refusal to be examined, the defense could not rely on an insanity defense or introduce expert testimony as to a mental condition in one of the non-capital cases, case number 49828, which was finally tried in October of 1995.[2]  Huskey was convicted of rape and related offenses.

_____

[1] The defendant was also indicted in case numbers 49828, 49829, 49830, 49831, 50090, and 50091 for multiple rapes, robberies, and kidnappings committed against several victims.  Although the defendant has raised several issues with respect to these cases, they are not before us in this appeal.

[2] When Judge Jenkins subsequently recused himself, all of the cases, including the capital cases in number 51903, were assigned to Judge Richard Baumgartner.

With regard to the remaining cases, including the capital cases we are concerned with here, more hearings were held on the mental examination issues in February, April, and May of 1996. On May 2, 1996, Judge Baumgartner ordered that Huskey was to be examined by Dr. Clifton Tennison at the McNabb Mental Health Center. After a two-hour interview with Huskey, Tennison reported to the trial court that he needed more sessions with Huskey, additional background information, and also "someone with substantive experience and demonstrated expertise," specifically in the field of disassociative identity disorder.

The trial court instructed Tennison to inquire into the availability of additional experts in the field after finding that someone with further expertise and experience was necessary to effectively complete the examination:

> [Dr. Tennison] advised us that due to the nature of the illness that Mr. Huskey may suffer from, that he felt that he was not personally capable of providing the Court with the best evaluation that could be accomplished. And that he felt the appropriate thing for him to do within the discipline that he's an expert in is to employ the services of an individual who was more qualified, had more experience, [and] had studied in this specific area of disassociative identity disorder.

At a later hearing, Tennison related the qualifications and experience of several experts in the field of disassociative identity disorder, including Dr. Phillip Coons, a psychiatrist in Indiana who had been brought to Tennison's attention by the prosecution.

On May 9, 1996, the trial court ordered in all the cases that Huskey be examined by Tennison and Coons. The order required the examination to be recorded but stated that no one could be present during the examination unless approved by Tennison and Coons. The order required counsel for the State and the defense to make available Huskey's medical records, employment records,

school records, psychological/psychiatric records, and witnesses with knowledge of Huskey's conduct. The order stated that upon completion of the examination, the defense would have "a reasonable period" in which to decide whether it intended to proceed with an insanity defense or evidence respecting a mental condition; if it did, the State would be provided with the "evaluation and test results from the examination."

Huskey objected to the participation of Coons, and argued that the order violated his right to counsel, right against self-incrimination, and right to due process. With regard to the four capital cases, the trial court granted Huskey's request for an interlocutory appeal of the May 9, 1996 order pursuant to Tenn. R. App. P. 9.[3] After the Court of Criminal Appeals denied the appeal, we granted Huskey's application for permission to appeal to this Court, finding that review of the May 9th order prior to conducting the examination would provide guidance to the trial court on these issues and avoid the possibility of serious errors that potentially would require retrials of four complex capital cases.

Because neither the defense nor the State sought a stay of the proceedings while the appeal was being sought, however, further events and hearings continued to unfold in the trial court. Although no examination was conducted pursuant to the May 9th order, the defense later moved that Huskey be examined by the Middle Tennessee Mental Health Institute (MTMHI) because MTMHI had conducted examinations with regard to disassociative identity disorder in prior cases. Hearings on this case culminated in the trial court entering an order on August 12, 1996, that expressly superseded its May 9th order.

---

[3] With regard to the remaining non-capital cases, 49829, 49830, 49831, 50090, and 50091, which were tried in May of 1996, the trial court ruled that Huskey's failure to submit to the examination precluded him from relying on an insanity defense or introducing expert testimony respecting a mental condition.

The superseding August order directed that Huskey was to be examined at Middle Tennessee Mental Health Institute (MTMHI) to determine his "mental responsibility" at the time of the offenses. It provided that all "clinical interviews" with Huskey were to be videotaped, but that defense counsel or defense experts could not attend the examination process. The order stated that MTMHI was to direct any requests for additional assistance to Dr. Tennison, who was to report the request to the trial court. Unlike the May 9th order, the superseding order did not require disclosure of records and witnesses but "encouraged [prosecution and defense counsel] to cooperate with requests for information from [MTMHI], subject to the attorney-client or other applicable privileges." Finally, the order provided that all information and opinions formed in the examination would be held confidential until the defense was given a copy of the report and also a reasonable period in which to determine whether to proceed with an insanity defense or expert testimony regarding a mental condition. The State was then to be given the "evaluation and test results" from the examination.

After beginning its examination, MTMHI notified Tennison that it required additional assistance with regard to disassociative identity disorder. At a later hearing, Tennison and Dr. Samuel Craddock, a psychiatrist with MTMHI, testified that further expert assistance was needed to complete the examination. The trial court once again instructed Tennison to inquire as to the availability of additional experts. When Tennison later informed the court of Dr. Richard Kluft, a psychiatrist from Philadelphia, Pennsylvania, the court considered Kluft's qualifications and availability, and made the following findings:

> [I]t is clear to the Court at this point in time, based on the record, that someone who has more experience, someone who is more versed in this area is needed to complete the evaluation process. What we have at this stage is an incomplete process which is not going to be of benefit to the Court or, ultimately, to the trier of fact in this case. . . .

> It appears to me, based on again Dr. Tennison's testimony here today, that Dr. Kluft . . . a medical doctor from the Philadelphia area . . . [and] director of Disassociate Identity Disorder Center . . . sounds to me to be the most appropriate individual; and also . . . the most available at this stage of the proceedings, and I am going to ask Dr. Tennison to employ the services of Dr. Kluft for the purposes of completing this evaluation.

Over defense objections, the trial court conducted a teleconference with Kluft and then ordered that Huskey be examined by Kluft.

Huskey was examined by Dr. Kluft, subject to defense objections. On October 26, 1996, after Kluft's examination, the trial court provided a copy of Kluft's report to the defense. The report indicated that Huskey suffered from disassociative identity disorder and met the standard for insanity. On October 28, 1996, the trial court ruled that the defense had 48 hours in which to elect to proceed with a mental responsibility defense, after which the materials stemming from the examination would be disclosed to the State. The defense objected to the disclosure of the material and on October 29, 1996, sought a stay of the order from this Court.

In seeking the stay of the trial court's order, Huskey for the first time advised this Court of the events that had transpired since the May 9th order; specifically, that the trial court had entered the August 12th superseding order, and that an examination had occurred. Despite the changed circumstances, we concluded that the reasons for granting interlocutory review remained valid:

> After due consideration, this Court concludes that the reasons for reviewing the interlocutory appeal granted on October 7, 1996, remain valid, notwithstanding the fact that the defendant has now undergone an evaluation. . . . An interlocutory appeal will serve the interest of deciding complex issues before the trial proceeds, thus reducing the potential for a serious error that would necessitate a retrial. Moreover, this Court further concludes that the trial court ruling of October 28, 1996, granting the State access to

records from the evaluation, is directly related to the
right to counsel and self-incrimination issues this
Court has already elected to review.

We therefore stayed the trial court's order and the trial so as to complete our review of the issues presented in this interlocutory appeal.

## MENTAL EXAMINATIONS

A defendant who seeks to rely on an insanity defense or introduce expert testimony with respect to a mental disease, defect or condition, must file notice prior to trial in accordance with Tenn. R. Crim. P. 12.2 (a) and (b). When notice is filed, the prosecution may request that the defendant be compelled to undergo a mental examination "by a psychiatrist or the other expert designated for this purpose" by the court. Tenn. R. Crim. P. 12.2(c). The rules limit the use at trial of statements made by the defendant in the course of the court-ordered examination:

> No statement made by the defendant in the course of
> any examination provided for by this rule, whether the
> examination be with or without the consent of the
> defendant, no testimony by the expert based upon
> such statement and no other fruits of the statement
> shall be admitted in evidence against the defendant in
> any criminal proceeding except for impeachment
> purposes or on an issue respecting mental condition
> on which the defendant has introduced testimony.

Tenn. R. Crim. P. 12.2(c). If a defendant fails to comply with a court-ordered examination, the trial court may preclude the defendant from relying on the insanity defense or introducing expert testimony as to a mental condition. Tenn. R. Crim. P. 12.2(d).

We observed in Martin, supra, that "there are obvious concerns generated when a defendant is compelled to undergo a mental examination at which he or she will, in all likelihood, discuss not only details of his or her life but also information about the charged offense." Like the defendant in Martin,

Huskey challenges the court-ordered mental examination as violative of his right against self-incrimination and his right to counsel under the United States and Tennessee Constitutions. Huskey also raises several issues with regard to the number and nature of examinations ordered by the trial court, as well as the trial court's order granting discovery of materials and results stemming from the court-ordered examination to the prosecution.[4]

## SELF-INCRIMINATION

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." Article I, § 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Although we may extend greater protection under our State Constitution, we have traditionally interpreted article I, § 9 to be no broader than the Fifth Amendment. See Martin, 950 S.W.2d at 22; State v. Frazier, 914 S.W.2d 467, 473 (Tenn. 1996).

We observed in Martin that virtually every federal and state jurisdiction has held that where a defendant raises an insanity defense, a court-ordered psychiatric examination and the prosecution's use of evidence from the examination to rebut evidence of a mental condition introduced by a defendant does not violate the Fifth Amendment privilege against self-incrimination. 950 S.W.2d at 24 n. 3 (collecting cases). We likewise found that a court-ordered mental examination does not violate article I, § 9 of the Tennessee Constitution, provided that any statements made by the defendant during an examination, and

---

[4] By filing several motions with this Court and by restating the issues in his briefs on appeal, defense counsel has repeatedly sought to expand the number of issues for review, as well as to include issues pertaining to the non-capital cases in 49828, 49829, 49830, 49851, 50090, and 50091. Our review, however, is limited to case number 51903; specifically, whether the court's orders compelling Huskey to undergo the mental examination and requiring disclosure of the examination material to the prosecution violated the defendant's right to counsel and the right against self-incrimination. Accordingly, we express no view on any of the other arguments made by Huskey.

-9-

any "fruits" from such statements, are admissible at trial only for impeachment and to rebut any evidence respecting a mental condition introduced by the defendant. Id. at 24-25; see Tenn. R. Crim. P. 12.2(c).

Our reasoning was two-fold. First, as stated by the United States Supreme Court, "when a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that [the defendant] has interjected into the case." Estelle v. Smith, 451 U.S. 454, 465, 101 S. Ct. 1866, 1874, 68 L.Ed.2d 359 (1981). As one commentator has summarized:

> Once either or both notices are filed [by a defendant], the court, upon motion of the prosecution, can order the defendant to submit to a psychiatric examination by a psychiatrist designated by the court. This provision is the key to the notice requirement because the prosecution would be placed at a serious disadvantage if it could not introduce its own expert testimony, based upon the examination of the defendant, in response to the alleged lack of responsibility due to mental condition.

Wayne R. LaFave, Criminal Practice and Procedure, § 19.4 at 517.

Second, the admissibility of the defendant's statements made during an examination at trial is expressly limited to impeachment or rebuttal of the mental condition evidence introduced by the defendant. "In other words, such material may not be used by the prosecution to prove the guilt of the defendant and may not be used if the defense does not introduce testimony at trial on mental condition." Martin, 950 S.W.2d at 24-25; LaFave, supra, § 19.4 at 517-18.

In this case, Huskey initiated Rule 12 proceedings by properly filing notice of his intent to rely on expert testimony as to a mental condition and the defense of insanity. The prosecution moved the trial court to order Huskey to

undergo a mental examination. After numerous hearings, Judge Baumgartner required Huskey to submit to a mental examination.

Under Martin, supra, and the overwhelming weight of state and federal authority, such a procedure did not in and of itself violate the defendant's right against self-incrimination. It is now incumbent upon the trial court and the parties to adhere to the protections built into Tenn. R. Crim. P. 12.2(c): any statements made by Huskey during the examination, any expert testimony based on such statements, and any "fruits" derived from the statements are admissible at trial against the defendant only for impeachment or rebuttal of evidence of mental condition or insanity introduced by the defendant. These limitations ensure full protection of the defendant's right against self-incrimination.

## RIGHT TO COUNSEL

The Sixth Amendment to the United States Constitution and article I, § 9 of the Tennessee Constitution guarantee the right to the assistance of counsel at critical stages "where counsel's absence might derogate from the defendant's right to a fair trial." The right to counsel "preserves the defendant's basic right to a fair trial as affected by [the] right meaningfully to cross examine the witnesses . . . and to have effective assistance of counsel at the trial itself." Martin, 950 S.W.2d at 25 (quoting, United States v. Wade, 388 U.S. 218, 226, 87 S. Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967)).

In Martin, we joined the majority of jurisdictions in holding that a defendant does not have the right to the physical presence of counsel during a court-ordered mental examination:

> [W]e agree with the courts which have distinguished the 'critical stage' prior to a psychiatric examination from the examination itself. We are convinced that the examination differs in purpose and procedure from other stages of the adversarial system, and that counsel's physical presence in a strictly passive, observational capacity, is not necessary to protect the defendant's related rights to a fair trial and to confront witnesses. In particular, the defendant has access to the information and results generated by the mental examination, as well as the right to interview, subpoena, and cross-examine the experts with regard to their methodology, opinions, and results.

950 S.W.2d at 26-27. In contrast, a defendant does have the constitutional right to counsel in making the decision whether to assert a mental condition defense and thereby submit to a psychiatric examination. Id. at 25 (citing, Estelle v. Smith, 451 U.S. at 470-71, 101 S. Ct. at 1877; Satterwhite v. Texas, 486 U.S. 249, 254, 108 S. Ct. 1792, 1796, 100 L.Ed.2d 284 (1988); Powell v. Texas, 492 U.S. 680, 685, 109 S. Ct. 3146, 3150, 106 L.Ed.2d 551 (1989)).

In this capital case, the trial court's May 9th order deferred the question of the presence of counsel or a defense expert to the mental evaluators, and the August 12th order precluded counsel or a defense expert from being present at the examination. Although not constitutionally required, the trial court's orders required recording of all the examinations of Huskey, a measure we endorsed and encouraged in Martin to "preserve evidence and to enhance the accuracy and reliability of the truth-seeking function of the trial." 950 S.W.2d at 27. This issue is controlled by Martin. The trial court's orders did not violate Huskey's right to counsel under the United States or Tennessee Constitutions.

## MULTIPLE EXAMINATIONS

In addition to the Martin issues, the defendant challenges the number and nature of the trial court's orders compelling the mental examination.

-12-

He contends that Rule 12.2(c) limits the prosecution to a single examination, regardless of whether the examination yields a particular conclusion or result.[5]

The record shows that the trial court initially ordered a mental examination to be conducted by Dr. Tennison of the McNabb Mental Health Center. After conducting a two-hour interview with Huskey, Dr. Tennison told the trial court that he could not complete an examination without more information and additional expert assistance. After additional hearings, the trial court, on May 9, 1996, ordered Huskey to be examined by Tennison and Dr. Phillip Coons. When this examination never took place, because of the refusal by the defense, additional hearings culminated in the August 12th superseding order that required Huskey to be examined by Dr. Tennison and experts at MTMHI.

The superseding order contained numerous safeguards: officials were ordered to determine only Huskey's mental responsibility at the time of the offense; all clinical interviews with Huskey were to be recorded; requests by MTMHI for information were subject to the attorney-client or other applicable privileges; and the defense was to receive a copy of the examination results and a period of time in which to determine whether it would proceed with its mental condition defense prior to disclosure of any material to the prosecution. While Huskey consented to the examination pursuant to this order, the examination once again could not be completed. Tennison and Dr. Craddock of MTMHI informed the trial court that additional expert assistance was needed to complete the examination. The trial court then ordered that Huskey was to be examined by Dr. Kluft. This examination took place as ordered, and Kluft rendered his findings and opinions.

---

[5] Although Huskey includes the orders entered by Judge Jenkins in his argument, we reiterate that our review is solely over the rulings of Judge Baumgartner in case number 51903. Huskey also argues that the prosecution "manipulated" its filing of motions under Rule 12.2(c), resulting in the examinations being ordered just prior to the non-capital trials and leaving insufficient time for adequate preparation. While we note that the trial court expressly rejected this contention, the issue is not among those on which we granted this interlocutory appeal.

We do not interpret Tenn. R. Crim. P. 12.2(c) so narrowly as to allow only a single interview. See Martin, 950 S.W.2d at 21; see also State v. Lovelace, 469 A.2d 391 (Conn. 1983), cert. denied, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984)(discretionary with trial court). The record reflects that Dr. Tennison was unable to complete the examination and candidly informed the trial court that he needed additional assistance. Dr. Craddock of MTMHI also was unable to complete an examination and requested assistance. Dr. Kluft, an expert in disassociative identity disorder, was located and was able to complete the examination. Accordingly, the trial court monitored the proceedings, carefully considered the expert testimony, and, based on the evidence, ensured that the defendant was subjected to a complete examination. We conclude there was no abuse of the trial court's discretion.

**DISCOVERY**

Much of Huskey's argument is aimed at the trial court's orders allowing disclosure of material relating to the court-ordered examination under Rule 12.2(c) to the prosecution. His primary contention is that discovery of materials related to expert testimony is governed by Tenn. R. Crim. P. 16, and that the State is not entitled to materials relating to the examinations conducted by Dr. Tennison, MTMHI experts, or Dr. Kluft, unless the defense presents these experts as witnesses. The trial court ruled that Rule 12.2(c) was not limited by Rule 16. We agree.

In Martin, we said that restricting disclosure of the results of a court-ordered examination under Rule 12.2(c) "begs the question of how the prosecution would recognize appropriate impeachment or rebuttal without access to the material." 950 S.W.2d at 25. Our conclusion was based on the context and purpose of a court-ordered evaluation Rule 12.2(c):

It would be most anomalous to say that a defendant may advance the defense of insanity, have himself examined by his own experts and then invoke the constitutional guarantees against self-incrimination for the purpose of preventing examination by the state. [Citation omitted]. It would be a strange doctrine, indeed, to permit a person charged with a crime to put in issue his want of mental capacity to commit it, and in order to make his plea invulnerable, prevent all inquiry into his mental state or condition.

Id. at 24 (quoting, State v. Whitlow, 45 N.J. 3, 210 A.2d 763, 767 (1965)).

The defendant's reliance on discovery under Tenn. R. Crim. P. 16 is misplaced. In general, the state's duty to disclose reports of examinations and tests is set forth in Tenn. R. Crim. P. 16(a)(1)(D):

Reports of Examinations and Tests. Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial.

The defendant's duty to disclose is governed by Tenn. R. Crim. P. 16(b)(1)(B):

Reports of Examinations and Tests. If a defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the state, the defendant, on request of the state, shall permit the state to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to the witness' testimony.

Accordingly, disclosure of reports of physical and mental examinations and tests by a defendant under Rule 16, assuming all other requirements are met,

-15-

depends on whether the defendant intends to introduce evidence or call a particular witness at trial.

There is, however, no similar provision limiting disclosure in Rule 12.2. The rule enables the prosecution to move for a court-ordered evaluation after a defendant notices intent to rely on evidence as to insanity or mental condition. The purpose of the rule is to provide the prosecution with a means to obtain necessary information to rebut evidence of mental condition presented by the defendant, while at the same time safeguarding a defendant's right against self-incrimination. This function simply could not be achieved were a defendant permitted to prevent disclosure of the results by declining to use the evidence generated by the examination or electing not to call the witness who conducted the examination as a witness at trial. See, e.g., State Vilvarajah, 735 S.W.2d 837, 839 (Tenn. Crim. App. 1987)(noting distinction between evaluations under Rule 12.2 and discovery under Rule 16(b)(1)(B)).

The defendant also contends, however, that disclosure should not include information that is subject to the attorney/client privilege or protected by the work product doctrine. In this regard, we note that the superseding order of August 12th made disclosure by the defendant to mental health officials "subject to" any applicable privileges. The protection in Rule 12.2(c) limiting the admissibility of statements made by a defendant in the course of an examination is a protection of the right against self-incrimination. See LaFave, supra, at 174. Thus, in Martin, supra, we said that a defendant "is free to object in limine to any material on the basis of privilege, relevance, or any other ground." 950 S.W.2d at 25. The defendant may, therefore, on remand, object to disclosure of specific material and attempt to establish the applicability of a privilege or other basis for non-disclosure.

-16-

In summary, we hold that the court-ordered examination and the disclosure of the examination material does not violate the defendant's right against self-incrimination, provided the admissibility of any statements made by the defendant during the examination, and any "fruits" derived therefrom, is only for impeachment or rebuttal of evidence of mental condition introduced at trial by the defendant. Moreover, disclosure of the information from the examination is not limited by Rule 16 and does not depend on whether the defendant intends to use the information or witness involved in the Rule 12.2(c) examination.

## CONCLUSION

For all of the foregoing reasons, we hold that the trial court's order compelling Huskey to undergo a mental examination pursuant to Tenn. R. Crim. P. 12.2 did not violate the right to counsel or the right against self-incrimination under either the United States or Tennessee Constitutions. We also hold that disclosure of the material and results related to the examination to the State is proper under the rules, provided any statements made during the examination by the defendant, and any "fruits" derived from the statements, are admissible at trial only for impeachment or rebuttal of evidence respecting a mental condition introduced by the defendant.

Accordingly, the judgment of the trial court is affirmed and this case is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the defendant, Thomas Dee Huskey, for which execution shall issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Reid, Birch, and Holder, JJ.

-17-