## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FILED

November 23, 1998

Cecil W. Crowson
Appellate Court Clerk

**FOR PUBLICATION**

STATE OF TENNESSEE, )

    Appellee, )

Vs. )

)

PAUL DENNIS REID, )

    Appellant, )

)

)

AND )

)

)

STATE OF TENNESSEE, )

    Appellee, )

)

Vs. )

)

CHRISTOPHER DAVIS, )

)

    Appellant. )

**Filed: November 23, 1998**

Supreme Court
No. 01S01-9809-CC-00175

Hon. John H. Gasaway, III,
Judge
Montgomery County
No. 38887

Hon. Cheryl Blackburn,
Judge
Davidson County
No. 97-C-1834

Hon. J. Randall Wyatt,
Judge
Davidson County
No. 96-B-866

**FOR APPELLANT REID:**

J. Michael Engle
Assistant Metro Public Defender
Nashville, Tennessee

Michael R. Jones
Public Defender
19th Judicial District
Clarksville, Tennessee

**FOR APPELLANT DAVIS:**

Hershell Koger
Pulaski, Tennessee

Niles Nimmo
Nashville, Tennessee

**FOR STATE OF TENNESSEE:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante
Assistant District Attorney General
Nashville, Tennessee

Victor S. Johnson, III
District Attorney General
20th Judicial District

    John Wesley Carney, Jr.
District Attorney General
19th Judicial District

**FOR AMICUS CURIAE:**

Tennessee Association Criminal Defense Lawyers
Jefferson T. Dorsey
Nashville, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS                   DROWOTA, J.

AFFIRMED AS MODIFIED.

We granted and consolidated the applications for permission to appeal filed on behalf of Paul Dennis Reid and Christopher Davis to consider the following three important questions of criminal procedure.

> 1. Whether a defendant must give pre-trial notice of the intent to introduce expert testimony of his or her mental condition as mitigation at the sentencing phase of a capital trial?
>
> 2. If so, whether, at the request of the State, the trial court may order a mental examination of the defendant by a mental health expert selected by the State?
>
> 3. If so, what procedures should be followed in connection with this notice and examination?

For the reasons herein explained, we hold that a capital defendant must file pretrial notice of intent to present expert testimony regarding mental condition as mitigation evidence at the sentencing phase of the trial. Once such a notice is filed, the trial court, upon request of the State, may order the defendant to undergo a psychiatric evaluation by a mental health expert selected by the State. The defense will be afforded access to any expert reports prior to trial. The State will be afforded access to the reports only after a jury returns a verdict of guilty and the capital defendant confirms his or her intent to offer expert mental condition evidence in mitigation at the sentencing hearing. Accordingly, the decisions of the Court of Criminal Appeals are affirmed as modified.

## **BACKGROUND**

Because this appeal involves questions of law, the relevant facts are

undisputed. The defendant, Paul Dennis Reid is charged in Davidson County with two counts of premeditated first degree murder and two alternate counts of first degree felony murder. Reid is also charged in Montgomery County with two counts of first degree premeditated murder and two alternate counts of first degree felony murder for two separate killings. The defendant Christopher Davis is charged in Davidson County with two counts of premeditated first degree murder and two alternate counts of felony first degree murder. These three cases have been assigned to three different trial judges.

In each of these cases, the State has given notice of its intention to seek the death penalty, and in each of these cases, the trial judge has ruled that the defense must provide pretrial notice to the State of intent to introduce evidence relating to mental condition as mitigation proof during the sentencing phase of the capital trial. In addition, all three trial courts ruled that Reid and Davis must undergo a psychiatric evaluation by a mental health expert selected by the State once the notice is filed. Each trial judge entered an order delineating the procedure to govern the evaluation once the notice is filed. The orders differed in one primary respect: the procedure to be followed after completion of the mental evaluation.

The orders entered in the Davidson County cases provide for the report of the mental health expert to be delivered to the court once the evaluation is complete. The trial judge will then provide the report to defense counsel to allow each of the defendants to decide, with the assistance of counsel, whether or not to proceed with the introduction of evidence of mental condition at the sentencing

-3-

phase. If the defense elects to proceed with the introduction of mental condition evidence, the expert's report is given to the prosecution prior to trial. If, however, the defense elects to forego introduction of mental condition evidence, the State is not permitted to review the expert's report at all.

In contrast, the order entered by Judge Gasaway in Montgomery County provides for the report of the State selected expert, and the report of any defense mental health expert, to be filed under seal with the trial court before commencement of jury selection. The reports will be released only in the event the jury returns a verdict of guilty of first degree murder and the defendant confirms his intent to offer mental condition evidence at sentencing. If the defendant withdraws his previously filed notice of intent to offer such evidence, the reports will not be released.

Following entry of the orders, both the Davidson and Montgomery County trial courts allowed the defendants to seek interlocutory appeals. The Court of Criminal Appeals accepted review and, in separate decisions, upheld the validity of the pretrial notice requirement and expert mental evaluation imposed upon Reid and Davis. The intermediate court adopted the procedural guidelines delineated by the Montgomery County Circuit Court which limits access to any expert reports until the jury returns a verdict of guilty and the capital defendant confirms his intent to introduce expert mitigation proof of mental condition at the sentencing hearing.

From those decisions, Reid and Davis filed separate applications for permission to appeal to this Court, and on September 30, 1998, we granted the

applications, consolidated the appeals, and set the cause for hearing on October 15, 1998. For the reasons that follow, we affirm as modified the decisions of the Court of Criminal Appeals.

## ANALYSIS

### A. Authority To Impose Requirements

In this Court, the defendants first argue that the trial courts had no legal authority to require a capital defendant either to provide pretrial notice of intent to offer mental condition evidence or to submit to an evaluation by a State selected mental health expert. According to the defendants Tenn. R. Crim. P Rule 12.2 is limited in application to expert mental condition evidence relevant to the determination of guilt or innocence. The defendants likewise argue that Tenn. R. Crim. P. 16 requires disclosure of an expert's report only if the report will be introduced by the defendant as evidence in chief at trial or if the report was prepared by a witness the defendant intends to call at trial and the report relates to the testimony of the witness.

While conceding that neither Rule 12.2 nor Rule 16 specifically refers to the sentencing phase of a capital trial, the State emphasizes that appropriate provisions of those Rules previously have been applied in the context of a capital sentencing proceeding. Where, as here, no rule precisely addresses the situation, the State argues that the trial courts have inherent power to adopt a procedure which is consistent in principle and spirit with existing rules of criminal procedure and with the statutory scheme governing capital sentencing proceedings.

Clearly no existing rule of criminal procedure precisely governs the issues in this appeal. While Rule 12.2 certainly is analogous, it specifically governs the notice and evaluation required when a defendant intends to introduce expert testimony of mental condition at the guilt phase of a trial. It does not specifically require the defendant in a capital case to give notice of his or her intent to introduce expert mental condition testimony at the sentencing phase. Likewise, Rule 16 is designed to govern reciprocal discovery prior to trial and does not address the various interests implicated by the issues in this appeal.[1] The inapplicability of these rules does not mandate the conclusion that the trial courts had no legal authority to impose notice, evaluation, and disclosure requirements.

It is well settled that Tennessee courts have inherent power to make and enforce reasonable rules of procedure. Shettles v. State, 209 Tenn. 157, 161-62, 352 S.W.2d 1, 3 (1961); Brewer v. State, 187 Tenn. 396, 400, 215 S.W.2d 798, 800 (1948); Denton v. Woods, 86 Tenn. 37, 5 S.W. 489 (1887); State v. Johnson, 673 S.W.2d 877, 882 (Tenn. Crim. App. 1984); Haynes v. McKenzie Memorial

---

[1]By so stating, we do not intend to imply that Tenn. R. Crim. P. 16 never applies in a capital sentencing hearing. As the State points out, we have previously applied Rule 16 to issues arising in the context of a capital sentencing hearing. For example, in State v. Nichols, 877 S.W.2d 722, 729 (Tenn. 1994), we affirmed a trial judge who ordered a defense psychologist to provide to the prosecution any interview notes which would relate to his testimony at the sentencing hearing. We stated, "when a psychologist or psychiatrist does not prepare a summary report, but instead relies on extensive memoranda to record not only observations and hypotheses but also evaluations, such records are discoverable under Rule 16(b)(1)(B)." Id. at 730. Likewise, in State v. Buck, 670 S.W.2d 600 (Tenn. 1984), the State had failed to provide certain materials and the names of certain witnesses to the defendant. On appeal, the defendant argued that the trial court should not have allowed the witnesses to testify because of the nondisclosure of the State. Although we based our decision on the content of the witnesses' testimony, we further observed that "the trial judge was ... also in error in implicitly sustaining the prosecution in its claim that Rule 16 and discovery rules were not applicable in the sentencing hearing." Id. at 606. Accordingly, when an existing rule of criminal procedure precisely addresses an issue, we apply the rule even though the issue arises in the context of a capital sentencing proceeding. See Tenn. R. Crim. P. 1 (listing several proceedings to which the Rules apply and stating in subsection (i) that the Rules apply "[i]n any other situation where the context clearly indicates applicability). However, no existing rule of criminal procedure precisely addresses the issues in this appeal.

<u>Hosp.</u>, 667 S.W.2d 497, 498 (Tenn. App. 1984); <u>Hull v. State</u>, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976). Indeed, the General Assembly has explicitly recognized this inherent power. For example, Tenn. Code Ann.§ 16-3-407 (1994 Repl.), provides that "[e]ach of the other courts of this state may adopt additional or supplementary rules of practice and procedure not inconsistent with or in conflict with the rules prescribed by the supreme court." Moreover, Tenn. R. Crim. P. 57 recognizes that issues will arise during criminal trials for which "no procedure is specifically prescribed by rule" and provides that trial courts have the inherent power to "proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

Accordingly, we hold that when issues arise for which no procedure is otherwise specifically prescribed, trial courts in Tennessee have inherent power to adopt appropriate rules of procedure to address the issues. Rules adopted pursuant to this inherent power must be consistent with constitutional principles, statutory laws, and generally applicable rules of procedure. Indeed, when circumstances mandate the adoption of supplemental rules, trial courts should pattern such rules upon analogous generally applicable rules of procedure. Trial courts must also bear in mind that all procedural rules should be designed to provide for the just determination of every criminal proceeding, and to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. <u>See</u> Tenn. R. Crim. P. 2. Applying these guiding principles, we affirm and adopt the notice and evaluation requirements fashioned by the trial courts in these capital cases.

## B.  Notice and Evaluation Requirements

A capital defendant has a federal constitutional right to present mitigation evidence.  Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978); State v. Cazes, 875 S.W.2d 253, 266 (Tenn. 1994).  In accordance with that constitutional mandate, the Tennessee statute which governs capital sentencing proceedings provides that evidence may be offered during the sentencing phase which tends to "establish or rebut any mitigating factors."  Tenn. Code Ann. § 39-13-204(c) (1997 Repl.).  Among those mitigating factors specifically enumerated in the statute are three which directly relate to a defendant's mental condition: (1) "[t]he murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;" (2) "[t]he defendant acted under extreme duress or under the substantial domination of another person;" (3) "[t]he capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected the defendant's judgment."  Tenn. Code Ann. § 39-13-204(j)(2), (6) & (8) (1997 Repl.).  In addition, the statute directs the jury to consider "[a]ny other mitigating factor which is raised by the evidence produced by either the prosecution or defense at either the guilt or sentencing hearing."  Tenn. Code Ann. § 39-13-204(j)(9) (1997 Repl.).  Clearly, a capital defendant has a constitutional and statutory right to present mitigation proof relating to his or her mental condition.

Juxtaposed against a capital defendant's right to introduce a broad range of

proof in mitigation is the State's right to offer evidence to rebut the mitigating factors. Critical to any effective rebuttal of expert mitigation proof regarding mental condition is the State's ability to conduct an independent psychiatric evaluation of the defendant. As was aptly explained by a United States District Court:

> Psychiatry is far from an exact science because it does not rely primarily on the analysis of raw data. Instead, the basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject. The Government's expert cannot meaningfully address the defense expert's conclusions unless the Government's expert is given similar access to the basic tool of his or her area of expertise: an independent review with and examination of the defendant.

United States v. Haworth, 942 F.Supp. 1406, 1407-08 (D.N.M. 1996) (internal citations and quotations omitted); see also United States v. Beckford, 962 F.Supp. 748, 758 (E.D. Va. 1997). "If a defendant elects to present evidence of his mental condition as a reason why he should not be sentenced to death, the Government must be able to follow where he has led and introduce its own countervailing evidence." Haworth, 942 F.Supp. at 1408. Unless the State is allowed to conduct its own mental health examination, it may be deprived "of the only effective means it has of controverting [defense] proof on an issue that [the defendant] has interjected into the case". Estelle v. Smith, 451 U.S. 454, 465, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981); see also State v. Huskey, 964 S.W.2d 892, 897 (Tenn. 1998) (quoting Estelle and holding that a defendant who intends to offer expert proof of insanity may be ordered to undergo an evaluation by a State selected psychiatric expert). Clearly, the State's ability to rebut a defendant's expert mitigation evidence relating to mental condition would be effectively

precluded if the State is not afforded the opportunity to have the defendant evaluated by an independent mental health expert.[2] We agree with a statement made by the Florida Supreme Court when it addressed this issue: "[n]o truly objective tribunal can compel one side in a legal bout to abide by the Marquis of Queensberry's rules, while the other fights ungloved." Dillbeck v. State, 643 So.2d 1027, 1030 (Fla. 1994); see also Fla. R. Crim. P. 3.202 (delineating notice, examination, and procedure governing expert testimony of mental mitigation during the sentencing phase of a capital trial). Accordingly, we conclude that an independent psychiatric examination is essential to afford the State its right to rebut expert defense proof of mental condition.

In light of our conclusion, the necessity of requiring a capital defendant to provide pretrial notice of intent to offer expert mitigation proof of mental condition becomes apparent. Our death penalty statute provides that the sentencing hearing "shall be conducted as soon as practicable before the same jury that determined guilt." Tenn. Code Ann. § 39-13-204(a) (1997 Repl.) (emphasis added). Serious difficulties for the defendant, the prosecution, and the judicial system would result if notice of a capital defendant's intent to present expert mitigation proof is deferred until the conclusion of the guilt phase of the trial. No doubt there would be a lengthy delay before commencement of the sentencing phase while the State's expert examined the defendant. During this time the jury would likely remain idly sequestered. Particularly troublesome is the very real possibility that evidence presented at the guilt phase, which usually is also relied

---

[2]We emphasize that our holding in this appeal relates only to expert proof of mental condition. The notice, evaluation, and disclosure requirements do not apply to lay person testimony.

upon at sentencing, would fade from the minds of the jurors. See Beckford, 962 F.Supp. at 762-63 (discussing the difficulties arising if a defendant is not required to provide pretrial notice of intent to introduce expert mitigation evidence of mental condition). Requiring a capital defendant to provide pretrial notice of intent to introduce expert mitigation proof relating to mental condition protects the State's right of rebuttal and eliminates unjustifiable delay.

In addition, there are no constitutional principles which preclude the notice and evaluation conditions imposed by the trial courts in these cases. With respect to the constitutionality of pretrial notice requirements, Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), is instructive. In that case, the Supreme Court rejected the contention that requiring a criminal defendant to give pretrial notice of intent to rely upon an alibi defense violated the Fifth Amendment. In so holding, the Supreme Court in Williams stated:

> Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself.

Id. at 85, 90 S.Ct. at 1898; see also Johnson, 673 S.W.2d at 882 (approving a rule which required the defendant to provide notice of intent to present an alibi defense). We likewise conclude that requiring capital defendants to provide pretrial notice of intent to present expert mitigation proof relating to mental condition does not violate the Fifth Amendment. Beckford, 962 F.Supp. at 761.

In two recent cases, we discussed the constitutionality of the psychiatric

-11-

examination prescribed by Tenn. R. Crim. P. 12.2. See Huskey, 964 S.W.2d at 900; State v. Martin, 950 S.W.2d 20, 24 (Tenn. 1997). With respect to the Fifth Amendment right against self-incrimination we stated:

> the court-ordered examination and the disclosure of examination material does not violate the defendant's right against self-incrimination, provided the admissibility of any statements made by the defendant during the examination, and any 'fruits' derived therefrom, is only for impeachment or rebuttal of evidence of mental condition introduced at trial by the defendant. Moreover, disclosure of the information from the examination is not limited by Rule 16 and does not depend on whether the defendant intends to use the information or witness involved in the Rule 12.2(c) examination.

Huskey, 964 at 900. We also held that an independent examination does not violate a defendant's Sixth Amendment right to counsel so long as the defendant is provided the assistance of counsel when the decision of whether or not to raise an insanity defense is made. Martin, 950 S.W.2d at 26.

Though the evaluation and notice issues in this appeal relate to the sentencing phase of a capital trial rather than to the guilt-innocence determination, the controlling constitutional precepts remain the same. Beckford, 962 F.Supp. at 760. The Sixth Amendment is satisfied so long as a capital defendant is provided the assistance of counsel when he or she decides whether to introduce expert mitigation proof relating to mental condition at the sentencing phase. Once the decision is made to proceed with the introduction of such proof, the Fifth Amendment right against self-incrimination does not preclude a court-ordered examination by a State selected mental health expert. Id. Disclosure of the examination material does not violate the defendant's right against self-incrimination, provided the admissibility of any statements made by the defendant

-12-

during the examination, and any 'fruits' derived therefrom, is admitted only for impeachment or rebuttal of evidence of mental condition introduced by the defense at the sentencing phase of the trial. United States v. Hall, 152 F.3d 381, 398 (5th Cir. 1998); see also Brown v. Butler, 876 F.2d 427, 430 (5th Cir. 1989) (holding that the State could not introduce expert testimony based upon a previous psychological examination of the defendant where the defendant announced an intention to offer expert psychological evidence but never actually introduced the evidence); Beckford, 962 F. Supp. at 761. Accordingly, we conclude that requiring a capital defendant to submit to a psychiatric examination by a State selected mental health expert is constitutionally permissible.

### C. Procedural Safeguards

As a final issue, we must set forth a procedural framework which both accommodates the State's right of rebuttal and safeguards a capital defendant's constitutional right against self-incrimination. The procedures adopted by the trial courts in these three capital cases are similar. The primary difference is the time at which the defense and State are provided access to the expert reports. Under the Davidson County orders, the reports are given to the State prior to trial. Under the Montgomery County order, which the Court of Criminal Appeals adopted, access to any expert reports is deferred until after the jury returns a verdict of guilty and the capital defendant confirms his intent to introduce expert mitigation proof at the sentencing hearing.

The State contends that it should be given access to the results of any

independent psychiatric examination prior to trial.  In our view, there are valid

justifications for providing the State access to the report only after the jury has

returned a verdict of guilty <u>and</u> a capital defendant confirms his or her intent to

offer expert mitigation evidence relating to mental condition at the sentencing

hearing.  First, delaying access to the report advances interests of judicial

economy by avoiding litigation as to whether particular pieces of evidence the

State seeks to admit prior to the defense offering psychiatric evidence were

derived from the State's psychiatric evaluation.  Delaying access also forecloses

the risk that the defendant's right against self-incrimination will be abridged by the

State's inadvertent or intentional introduction of the examination results or its fruits

for purposes other than impeachment or rebuttal of expert mitigation evidence of

mental condition introduced by the defense.  <u>Hall</u>, 152 F.3d at 399.

On the other hand, these same concerns do not apply to the defense.  In

fact, providing the defense with access to any expert reports prior to trial would

serve interests of judicial economy.  For example, the defense will have sufficient

time to review the reports, make an informed decision as to whether to introduce

expert mental condition mitigation proof, and be prepared at the conclusion of the

guilt phase of the trial to either confirm or withdraw the previously filed notice.  If

the defense confirms its previously filed notice, the State will then be given the

reports and should have sufficient time to study the reports and prepare its

rebuttal proof.

We therefore modify the decision of the Court of Criminal Appeals insofar

as it foreclosed both the State and the defense from having access to expert

reports until the jury has returned a verdict of guilty. We hold that the defense is entitled to have access to any expert reports prior to trial. The State will be afforded access to the reports only after a jury returns a verdict of guilty and the capital defendant confirms his or her intent to offer expert mental condition evidence in mitigation. In our view, this procedure both protects the State's right of rebuttal and safeguards the defendant's right against self-incrimination.

## CONCLUSION

In summary, we hold that where, as here, issues arise for which no procedure is otherwise specifically prescribed, courts in Tennessee have inherent power to adopt appropriate rules of procedure. We approve the notice and examination requirements imposed by the trial courts in these cases. As previously stated, they are consistent with constitutional principles, statutory laws, and generally applicable rules of criminal procedure. In addition the notice and examination requirements, which closely parallel the analogous provisions of Rule 12.2, Tenn. R. Crim. P., ensure fairness and eliminate unjustifiable delay. With respect to the disclosure procedures, we affirm as modified the decisions of the Court of Criminal Appeals.

Moreover, we adopt the notice, examination, and disclosure requirements approved in this appeal as the governing procedure in this State in every death penalty trial in which the capital defendant intends to introduce expert mitigation evidence relating to mental condition at the sentencing hearing of his or her trial. The specific procedure is set out below.

-15-

1.  If a capital defendant intends to introduce expert mental condition testimony as mitigation at the sentencing hearing, he or she must file pretrial written notice of intent no later than an appropriate date set forth by the trial court.  The notice shall include the name and professional qualifications of any mental condition professional who will testify and a brief, general summary of the topics to be addressed that is sufficient to permit the State to determine if an evaluation is necessary and, if so, the area in which its expert must be knowledgeable.

2.  If a capital defendant files notice that he or she intends to introduce expert mental condition testimony at the sentencing hearing, the defendant shall, if requested by the State, be examined by a psychiatrist or other mental health professional selected by the State.  The examination shall take place within a reasonable time frame set forth by the trial court.  The State and defense will cooperate to provide the court-ordered professional with all necessary and relevant information.  Said examination may be videotaped in accordance with the guidelines adopted in State v. Martin, 950 S.W.2d 20 (Tenn. 1997).  The report of that examination and the report of any psychiatric examination initiated by the defendant shall be filed under seal with the Court before the commencement of jury selection.  The Court-appointed professional conducting the examination for the State shall not discuss his/her examination with anyone unless and until the results of the examination are released by the Court to counsel for the State following the guilt phase of the trial.

3.  The results of any examination by the State expert and the defense expert shall be released to the defense prior to trial to enable the defendant, with the assistance of counsel, to determine whether or not to introduce expert mental condition testimony as mitigation at the sentencing hearing.  The results of any examination shall be released to the State only in the event the jury returns a verdict of guilty of first degree murder and only after the capital defendant confirms his or her intent to offer expert mental condition evidence in mitigation at the penalty phase.  After the return of a guilty verdict, the defendant shall file a pleading confirming or disavowing his or her intent to introduce expert mental condition testimony at a penalty phase.  If the defendant withdraws the previously-tendered notice, the results of any mental condition examinations concerning the defendant will not be released to the State.  The reports of any examinations, whether by the State or defense experts, concerning the defendant shall be released to the State immediately after the filing of a pleading confirming the earlier notice.  Even if the defendant confirms his or her intent to offer mental condition evidence, the defendant may withdraw the notice of intent to introduce expert mental condition proof at any time before actually presenting such evidence, and, in that event, neither the fact

of notice, nor the results or reports of any mental examination, nor any facts disclosed only therein, will be admissible against the defendant.

_____
FRANK F. DROWOTA, III,
JUSTICE


**Concur:**
Anderson, C.J.,
Birch, Holder, Barker, JJ.